IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 4:11-cv-01050-SOW |
| vs. | ) | |
| | ) | |
| K & C BUDGET LOT, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff Owners Insurance Company ("Owners") brought this declaratory judgment action to obtain the Court's declaration that it owes no coverage to its insured, Defendant K&C Budget Lot, L.L.C. ("K&C"), for a class action claim brought by Defendant Rachelle Martinez ("Martinez") based on K&C's allegedly unlawful sales and financing practices in charging a public official fee to its customers. Owners has defended K&C for the underlying lawsuit under the Truth-in-Lending Errors and Omissions ("E&O") coverage in its garage liability policies issued to K&C. This defense is ongoing. Owners now seeks a declaration that it owes no coverage for the underlying Martinez class-action lawsuit under certain other provisions of its garage liability policies and its commercial general liability policies issued to K&C. Owners reserves its right to seek summary judgment under its Truth-in-Lending Errors and Omissions coverage at a later date.

Simply put, even if Owners owes a duty to defend under its Truth-in-Lending E&O coverage, it owes no duty to defend or indemnify K&C for the claims brought in the class-action Martinez lawsuit under any other coverage form that it has issued to K&C. The claims in the class-action suit do not allege an "occurrence" giving rise to "bodily injury" or "property damage." Nor do they allege a covered "personal injury" or "advertising injury" offense. Therefore, K&C cannot

establish the preconditions for coverage under the Owners CGL policies and Owners garage liability policies that afford coverage for "bodily injury," "property damage," "personal injury," or "advertising injury."  In addition, Owners is entitled to a declaration that K&C is entitled to no coverage under the insurance agents E&O and the security interests E&O coverage forms of its garage liability policies because the Martinez class-action lawsuit alleges no errors or omissions in insurance agent services or in the recording of security interests.

Accordingly, Owners is entitled to partial summary judgment and a declaration that it owes no coverage to K&C for the claims in the underlying class-action lawsuit under its CGL policies, the insurance agents E&O and the security interests E&O coverage parts set forth in the garage liability policies, or the portions of the garage liability policies affording coverage for "bodily injury," "property damage," "advertising injury," or "personal injury."

## II.    STATEMENT OF UNCONTROVERTED MATERIAL FACTS

### A.    THE UNDERLYING CLASS ACTION LAWSUIT

1.      Rachelle Martinez, on behalf of herself and as class representative, filed a "Petition Asserting Class Claims for Violations of the Motor Vehicle Time Sales Act, the Merchandising Practices Act, and the Uniform Commercial Code" ("the Class Action Petition") against K&C Budget Lot, LLC on April 27, 2009.  Her action is Case No. 0916-CV1371, which is pending in the Circuit Court of Jackson County, Missouri at Independence ("the Underlying Lawsuit").  The Class Action Petition filed in the Underlying Lawsuit is attached as Exhibit M.

2.      The claim brought by Martinez against K&C stems from K&C's auto sales and financing practices.  (Ex. M).

3.      In Count I of the Class Action Petition, Martinez alleges a violation of the Missouri Merchandising Practices Act ("MMPA").  She alleges K&C engaged in unfair and deceptive acts and practices and "converted" phony public official fees itemized in its sales contract to its own use and

benefit. She claims K&C falsely represented that an additional amount of $105 in the Retail Installment Agreement was specified to be "paid to public officials" when no such amount was paid by K&C. She further alleges K&C committed unfair and deceptive acts in falsely representing that it was paying an amount to public officials that it was not paying and that these representations were made with evil motives to cheat Martinez and the class members, and, therefore, warrant an award of punitive damages. The class action plaintiffs seek actual damages in excess of $100,000.00, punitive damages, and attorney fees under the MMPA. (Ex. M).

4. In Count II of the Class Action Petition, Martinez alleges a violation of the Motion Vehicle Time Sales Act ("MVTSA"). She alleges K&C falsely characterized the $105 fee as a payment to public officials and that this representation violated the MVTSA by including inaccurate and false information in the Retail Installment Agreement. For violating the MVTSA, she alleges K&C should be barred from attempting to collect any delinquency charges and be required to reimburse all finance charges actually paid, plus late fees paid arising out of the Retail Installment Agreements. The class action plaintiffs seek actual and statutory penalties in excess of $840,000.00 under the MVTSA. (Ex. M).

5. In Count III of the Class Action Petition, Martinez alleges a violation of the Uniform Commercial Code ("UCC"). She alleges K&C uniformly and routinely sent defective Pre-Sale Notices advising debtors of the upcoming sale of collateral without giving notice that they were entitled to an accounting of the amount owed so that they could elect to pay that amount and obtain possession of the vehicle. In addition, she alleges the Post-Sale Notices routinely sent by K&C failed to include an accounting. In this count, the class action plaintiffs allege actual damages and statutory penalties under the UCC in excess of $1,452,000.00, which consist of the total finance charge, whether paid or unpaid, plus ten percent of the sales price. (Ex. M).

6. Three classes were certified on June 30, 2010, and Martinez was appointed Class

Representative for all three classes. The Class Certification Order is attached as Exhibit N.

7. On October 20, 2010, the trial court in the class-action case granted partial summary judgment for Class Two (class members who received Notices of Intent to Sell Collateral which the trial court found violated provisions of the UCC) on Count III (UCC Claim) of the Class Action Petition. A copy of this Judgment is attached as Exhibit O.

8. On September 16, 2011, the trial court in the class-action case granted partial summary judgment for Class One (class members who paid the K&C public official fees in excess of the fees that K&C actually paid to public officials, which are damages claimed under both the MVTSA and MMPA claims) on Count II, awarding separate statutory damages under the Motor Vehicle Time Sales Act (MVTSA), as well as excess public official fees paid by class members under the MVTSA claim. Judgment was entered for Class One on October 11, 2011. A copy of the Order and Judgment are attached as Exhibit P.

9. In the underlying lawsuit, class members of Class Three are not seeking damages under Count III of the Class Act Petition for Post Sale of Collateral Notices that allegedly violated the UCC. A copy of Martinez's Answer to Interrogatory No. 4 in the underlying case is attached as Exhibit Q.

## B. THE INSURANCE POLICIES

10. Owners issued a Commercial Property Damage and Commercial General Liability Policy to K&C from March 19, 2003, to March 19, 2004, under Policy No. 964605-07404471. This policy was renewed for the periods from March 19, 2004, to March 19, 2005; March 19, 2005, to March 19, 2006; March 19, 2006, to March 19, 2007; and March 19, 2007, to March 19, 2008. Certified copies of the above-referenced policies (collectively, "the CGL Policy") are incorporated by reference and attached as Exhibits A through E to the Affidavit of Candice Sartin, filed herewith.

11.     The CGL Policy limits were $500,000 per occurrence, with a General Aggregate Limit per annual policy term of $500,000.

12.     Owners issued a Premier Garage Liability Policy with Dealers Plus Coverage to K&C from March 19, 2004, to March 19, 2005, under Policy No. 96-404-471-01.  The Dealers Plus Coverage includes coverage for Security Interest Errors and Omission ("E&O"), Insurance Agents E&O, and Truth-In-Lending E&O.  This policy was renewed for the periods from March 19, 2005, to March 19, 2006; March 19, 2006, to March 19, 2007; March 19, 2007, to March 19, 2008; March 19, 2008, to March 19, 2009; March 19, 2009, to March 19, 2010; and March 19, 2010 to March 19, 2011.  Certified copies of the above-referenced policies (collectively, "the Garage Liability Policy") are incorporated by reference and attached as Exhibits F through L to the Affidavit of Candice Sartin, filed herewith.

13.     The Garage Liability Policy limits were $500,000 per occurrence, subject to an annual $500,000 aggregate.  The 2004 through 2010 Dealers Plus/Truth-in-Lending coverage limits were $300,000 per occurrence, subject to a $300,000 annual aggregate.

14.     The CGL Policies (Exhs. A through E)[1] contain the following relevant provisions:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      Insuring Agreement

    a.      Bodily Injury and Property Damage Liability (Other Than Auto)

        (1)     **We** will pay those sums that **you** become legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies.

---

[1] The policy language differs slightly among the policy periods, but there are no material differences that impact coverage for any of the claims brought in the underlying action.  Therefore, for brevity's sake and simplicity, only the most recent coverage form for each policy is quoted herein.  Nonetheless, the full policies for each year are attached as exhibits, for the Court's reference.

***

2. Exclusions.

 This insurance does not apply to:

 a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

***

## COVERAGE B.  PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

 a. **We** will pay those sums that **you** become legally obligated to to pay as damages because of **personal injury** or **advertising injury** to which this insurance applies.

***

2. Exclusions.

 This insurance does not apply to:

 a. "Personal injury" or "advertising injury"

  (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity;

***

## SECTION I-DEFINITIONS

To understand this policy, **you** must understand the meaning of the following words.  These words appear in **bold face type** whenever used in this policy and attached amendatory forms.

B.   **Advertising Injury** means injury arising out of one or more of the following offenses:

1.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in **your advertisement**;

2.   Oral or written publication, in any manner, or material that violates a person's right of privacy in **your advertisement**;

3.   The use of another's advertising idea in your **advertisement**; or

4.   Infringing upon another's copyright, **trade dress** or slogan in **your advertisement**.

***

D.   **Bodily Injury** means **bodily injury**, bodily sickness, or bodily disease sustained by a person, including death resulting from any of these at any time.

***

S.   **Personal Injury** means other than **bodily injury** arising out of one or more of the following offenses:

1.   False arrest, detention or imprisonment;

2.   Malicious prosecution;

3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.   Oral or written publication, in any mater, of material that slanders or libels a person's or organization's good, products or services;

     5.     Oral or written publication, in any manner, of material that violates a person's right of privacy.

***

W.    **Property damage** means:

     1.     Physical injury to tangible property, including all resulting loss of use of that property.

***

LL.    **You** or **your** means the named **insured** shown in the declarations and if any individual, **your** spouse who resides in the same household.

***

15.    The DEALERS PLUS COVERAGE PACKAGE portion of the Garage Liability Policies contain the following relevant provisions:

A.    **INSURANCE AGENTS ERRORS AND OMISSIONS LIABILITY COVERAGE**

    1.    **Coverage**

    **We** will pay all sums which **you** shall become legally obligated to pay as damages because of errors or omissions that occur in the policy term and in **your** conduct as an automobile physical damage, credit disability income and/or credit life **insurance agent**. This coverage applies only with respect to Automobile Physical Damage, Credit Disability Income and/or Credit Life insurance placed by **you** covering **autos** purchased from **you** in the conduct of **your** business.

    2.    **Exclusions**

    This insurance does not apply to any liability for any claim or **suit** arising out of any:

8

**c.** Alleged dishonest, fraudulent, criminal, malicious or intentional act committed by an **insured**, or other party in interest acting alone or in collusion with others.

\*\*\*

**f.** Alleged violation of any federal, state, or municipal law, regulation, ordinance or code.

\*\*\*

3. **Definition**

**Insurance Agent** shall mean a person or organization licensed as an agent or broker in the jurisdictions in which **you** sell or service insurance and is any **employee** of **yours**.

4. **Limit of Insurance**

**Our** limit of insurance under this coverage shall not exceed the the Limit of Insurance shown in the Declaration for Insurance Agents E & O. **Our** limit of insurance for all errors and omissions in any one policy term shall not exceed the aggregate limit shown in the Declarations.

**B.** **SECURITY INTEREST ERRORS AND OMISSIONS LIABILITY COVERAGE**

1. **Coverage**

If after **you** have sold an **auto** during the policy term and:

**a.** **You** are responsible for but fail to properly record the security interest of the legal owner or lienholder in motor vehicle title papers; and

**b.** The purchaser sells the **auto** or transfers the title with knowledge of but without regards to those interests; and

    **c.** The legal owner of lienholder sustains a loss for which they make claim against **you**

    **We** will pay the lesser of the actual cash value of the **auto** or the outstanding lien balance which **you** are legally obligated to pay as damages to the legal owner or lienholder.

2.     **Exclusions**

    This insurance does not apply to any liability for any claim or **suit** arising out of any:

***

    **b.** Alleged dishonest, fraudulent, criminal, malicious or intentional act committed by an **insured**, or other party in interest acting alone or in collusion with others.

***

3.     **Limit of Insurance**

    **Our** limit of insurance under this coverage shall not exceed the

    the Limit of Insurance shown in the Declaration for Security Interest

    E & O. **Our** limit of insurance for all errors and Omissions in any one policy term shall not exceed the Aggregate limit shown in the Declarations.

16.     The Garage Liability Policies (Exhs. F through L) contain the following provisions:

**Section I – Definitions**

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and attached amendatory forms.

***

**B.**     **Advertising injury** means injury arising out of one or more of the following offenses:

1. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in **your advertisement;**

2. Oral or written publication, in any manner, of material that violates a person's right of privacy in **your advertisement**;

3. The use of another's advertising idea in **your advertisement**; or

4. Infringing upon another's copyright, **trade dress** or slogan in **your advertisement;**

\*\*\*

D.   **Bodily injury** means **bodily injury**, bodily sickness, or bodily disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

R.   **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

S.   **Personal injury** means other than **bodily injury** arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owners, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**5.** Oral or written publication, in any manner, of material that violates a person's right of privacy.

***

**W.**     **Property damage** means:

1.     Physical injury to tangible property, including all resulting loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.     Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **occurrence** that caused it.

***

1.     **Coverage**

    a.     **Bodily Injury and Property Damages Liability (Other Than Auto)**

        (1)     **We** will pay those sums that **you** become legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend **you** against any **suit** seeking those damages. **We** may at **our** discretion investigate any claim or **occurrence** and settle any claim or **suit** that may result. But:

            (a)     The amount **we** will pay for damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend **you** against any **suit** seeking those damages. **We** may at our discretion investigate any claim or **occurrence** and settle any claim or suit that may result. But:

12

(b)    **Our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under **bodily injury, property damage** or medical payments.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A and B.**

(2)    This insurance applies to **bodily injury** and **property damage** only if:

(a)    The **bodily injury** or **property damage** by an occurrence that takes place in the **coverage territory**; and

(b)    The **bodily injury** or **property damage** occurs during the policy period.

\* \* \*

## C.    CLAIM HISTORY

17.    Owners initially disclaimed coverage for the claims brought by Martinez on behalf of the class plaintiffs against K&C on February 20, 2009. This declination of coverage was based upon a pre-suit tender of a Petition for Class Action for Statutory Damages for Violation of the UCC. Owners, in its original declination letter, advised that under the Garage Liability Policy, which was in effect from March 19, 2008, to March 18, 2009, and which included Dealers Plus Coverage, that there was no coverage because the Petition did not allege damages caused by property damage, bodily injury, or advertising injury as defined in the policy. Owners further stated in the letter that the allegations in the lawsuit would not be covered under the policies' coverage forms for Insurance Agents, Security Interest, Truth-in-Lending, and Odometer and Prior Damage Disclosure Statutes

E&O coverages. A true and accurate copy of this letter is attached as Exhibit R to the Affidavit of Candice Sartin, filed herewith.

18. On April 27, 2009, Martinez filed the Class Action Petition upon which this coverage action is based, asserting three counts against K&C for its alleged violations of the MMPA, the MVTSA, and the UCC. (Ex. M).

19. Thereafter, on May 26, 2009, Owners acknowledged receipt of the Summons and the Class Action Petition, and advised that the Summons and Petition had been forwarded to a law firm for K&C's defense. A true and accurate copy of this letter is attached as Exhibit S to the Affidavit of Candice Sartin, filed herewith.

20. After the trial court in the Underlying Action certified the three above-referenced classes, Owners sent another letter, through counsel, on February 22, 2011, confirming its coverage position. This letter reiterated there was no coverage for the claims brought in the Class Action Petition under the Owners Truth-In-Lending E&O coverage, under its Security Interest E&O coverage, under its Insurance Agents E&O coverage, under its Garage Liability Coverage, or under its Commercial General Liability Coverage. A true and accurate copy of this letter is attached as Exhibit T to the Affidavit of Patrick A. Bousquet, filed herewith.

### III. LAW AND ARGUMENT

**A. Standard Governing Summary Judgment**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Omni Behavioral Health v. Miller*, 285 F.3d 646, 650 (8th Cir. 2002). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To successfully oppose summary judgment, the non-moving party may not merely rest upon allegations or denials in its pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law determines which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the suit's outcome under the governing law will prevent the entry of summary judgment. *Id.* Irrelevant or unnecessary factual disputes will not bar summary judgment. *Id.* Furthermore, the "nonmoving party must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## B.  Rules of Policy Construction

Under Missouri law, which governs this action, "[t]he interpretation of an insurance policy is a question of law for the court." *Hobbs v. Farm Bureau Town & Country Ins. Co. of Mo.*, 965 S.W.2d 194, 196 (Mo. App. 1998). Therefore, insurance coverage questions are amenable to resolution by summary judgment motion. *Niswonger v. Farm Bureau Town and Country Ins. Co. of Mo.*, 992 S.W.2d 308, 312 (Mo. App. 1999). Summary judgment is particularly appropriate when the issue is the construction of a contract that is unambiguous on its face. *Daniels Express and Transfer Co. v. GMI Corp.*, 897 S.W.2d 90, 91-92 (Mo. App. 1995).

It is a judicial function to interpret and enforce an insurance policy as written and not to rewrite the contract. *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. App. 1993). Words are to be given their plain and ordinary meaning. *Id.* Unambiguous policy provisions should be enforced as written. *Peters v. Employers Mut. Cas. Co.,* 853 S.W.2d 300, 302 (Mo. banc

1993).

An ambiguity exists only when there is duplicity, indistinctness, or uncertainty of meaning. *Chase Resorts, Inc.*, 869 S.W.2d at 150. In deciding whether an ambiguity exists, "the words will be tested in light of the meaning which would normally be understood by the average layperson." *Id.* A contract is not ambiguous merely because the parties disagree over its meaning. *Atlas Reserve Temporaries, Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. App. 2001). Parties to an insurance contract are free to agree to limit and restrict the coverage afforded under a policy. *Wilson v. Royal Globe Ins. Co.*, 577 S.W.2d 106, 108-09 (Mo. App. 1978). Finally, the parties' intent is not to be considered absent an ambiguity. *See Peters*, 853 S.W.2d at 302.

## C.      The Duty to Defend Generally

An insurer's duty to defend an insured arises whenever there is a potential or possible liability to pay based on the facts known at the outset of a case and that duty is not dependent on probable liability to pay based on the facts ascertained through trial. *Stark Liquidation Co. v. The Florists' Mut. Ins. Co.,* 243 S.W.3d 385, 391 (Mo. App. 2007). Whether an insurer has a duty to defend a suit against its insured is principally determined by comparing the language of the insurance policy with the allegations in the underlying petition, whether groundless or valid. *Stark*, 243 S.W.3d at 392; *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. App. 2005). An insurer has a duty to defend when the facts alleged present a claim potentially within the policy's coverage. *Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Amer.*, 295 S.W.3d 557, 561 (Mo. App. 2009).

Further, even if the petition itself does not give rise to a duty to defend, the insurer will have such a duty if the actual facts known to the insurer, or ascertainable upon a reasonable investigation, create the possibility of coverage. *Truck Ins. Exch.,* 162 S.W.3d at 79. Actual facts are those facts that were known, or reasonably should have been apparent at the commencement of the suit and not the proof made therein or the final result reached. *Standard Artificial Limb, Inc. v. Allianz Ins. Co.,*

895 S.W.2d 205, 210 (Mo. App. 1995). Although such facts may be used to provide coverage when the petition does not otherwise create it, "[i]f additional facts are ascertained which show that the action is not within the coverage of the policy, the insurer is not obligated to afford a defense." *Id.*

In this case, Owners chose to defend K&C under its Truth-in-Lending E&O coverage, under which it initially relied on an exclusion that it would have had the burden to prove. K&C, however, has the burden to prove that coverage exists in the first instance or imposes a duty to defend. *Hartford Ins. Co. of the Midwest v. Wyllie*, 396 F.Supp.2d 1033, 1038 (E.D. Mo. 2005).

Owners has at all times maintained there is no potential for coverage under any other coverage form that it issued to K&C because the allegations of the Class-Action Petition clearly fall outside the liability coverage provided by the policies for "property damage," "bodily injury," "advertising injury," or "personal injury," as well as the E&O coverages for insurance agent services and recording security interests. *See, e.g.,* Exs. R and T. It is these policy forms, and only these policy forms, which are the subject of this Motion for Partial Summary Judgment. A review of the allegations in the underlying class action lawsuit demonstrates there is no potential for coverage for these claims under these coverage parts of the Owners policies.

**D.**    **K&C and Martinez's affirmative defenses of Waiver and Estoppel have no application to the CGL policy, the "bodily Injury," "property damage, "advertising injury," or "personal injury" coverages in the garage liability policy, or to the E&O coverages for insurance agents services and recording security interests.**

Both K&C and Martinez have broadly claimed as affirmative defenses that Owners is barred from contesting coverage by the doctrines of waiver and estoppel. Owners has afforded a defense to, and continues to defend, K&C, under the Truth-in-Lending E&O coverage, but has reserved its right to rely on the terms, conditions, and exclusions of that Policy, as set forth in its letters to K&C of February 20, 2009, and February 22, 2011. (Exs. R and T.)

It is well-settled under Missouri law that the doctrines of waiver and estoppel may not be used to bring a claim within coverage when the risk is not covered by the policy's terms or is

expressly excluded therefrom. *Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co.*, 87 S.W.3d 408, 417 (Mo. App. 2002). This is because "estoppel and waiver do not themselves give a cause of action" and "the purpose of estoppel is to preserve rights previously acquired *but not to create new ones.*" *Lero v. State Farm Fire & Cas. Co.*, 2011 WL 5041191, at *6 (Mo. App. Oct. 25, 2011) (emphasis added).

As the Missouri Supreme Court has noted, waiver requires "the *intentional* relinquishment of a known right" and may only be implied "by conduct that *clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right.*" *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. 1999) (emphasis added). Estoppel requires inconsistent coverage defenses that the insured relies upon to its detriment. *Versaw v. Versaw,* 202 S.W.3d 638, 650 (Mo. App. 2006). Estoppel, however, applies only where an insurer *unjustifiably* refuses to defend an insured. *James v. Paul,* 49 S.W.3d 678, 688 (Mo. 2001). If the insurer is *justified* in refusing a defense because there is no coverage for the claim, these doctrines are inapplicable. The doctrine of estoppel is not to be lightly invoked, but rather should be applied carefully and cautiously. *Lero,* 2011 WL 5041191, at *4 (quoting *Whitney v. Aetna Cas. & Sur. Co.,* 16 S.W.3d 729, 733 (Mo. App. 2000)).

When Owners initially agreed to defend K&C in the underlying action on May 26, 2009 (Ex. S), it did so in light of its letter of February 20, 2009, wherein it expressly set forth certain coverage defenses on which it intended to rely. That letter stated:

> All rights, terms, conditions and exclusions in this policy are in full force and effect and remain completely reserved. No action by any employee, agent, attorney, or other person on behalf of Owners Insurance Company[,] or hired by Owners Insurance Company on your behalf[,] shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of this policy. (Ex. R).

Here, Owners put K&C on notice that it was not waiving any rights under its policies. This notice is sufficient to defeat the waiver and estoppel affirmative defenses asserted by K&C and Martinez. Under Missouri law, policy defenses are not waived where an insurer's coverage letter

expressly states the insurer's intention not to waive other defenses not stated therein. *See, e.g., Brown v. State Farm Mut. Auto. Ins. Co.,* 776 S.W.2d 384, 389 (Mo. banc 1989) (Where the insurer's initial denial is stated in such a way that it reasonably implies the subsequently, but more specifically stated, consistent reason for denial, estoppel may not be invoked); *Farm Bureau Town & Country Ins. Co. of Mo. v. Crain,* 731 S.W.2d 866, 874 (Mo. App.1987) (When an insurer initially denied a claim because of the insured's failure to cooperate in the investigation, the insurer did not waive the defense of arson where the insurer's denial letter expressly stated its intention not to waive other defenses.); and *Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co.,* 87 S.W.3d 408, 417 n. 2 (Mo. App. 2002).

Moreover, Owners provided K&C with a defense under the Truth-in-Lending E&O coverage while maintaining that it had reserved the right to raise coverage defenses, as evidenced by its letter of February 22, 2011. (Ex. T.) K&C has accepted that defense under a reservation and continues to do so to this date.

Owners has consistently maintained that neither the CGL Policies nor the provisions of the Garage Liability Policies -- other than the Truth-in-Lending E&O coverage -- provide any potential coverage for the claims in the Class-Action Petition. As set forth more fully below, Martinez and K&C cannot meet their threshold burden to show that the claims in the Class-Action Petition even *potentially* fall within these coverage forms. Because waiver and estoppel cannot be used to create coverage or new rights under a policy of insurance, these doctrines are simply inapplicable to the coverage forms at issue in this Motion.

**E.      There is no coverage under the Garage Liability Policy's coverage for "bodily Injury," "property damage, "advertising injury," or "personal injury."**

The Owners Garage Liability Policy provides coverage for "bodily injury" or "property damage" arising out of an "occurrence." Several of the policy periods also provide coverage for "advertising injury" or "personal injury" claims that arise from specifically enumerated offenses, including slander or libel, violation of the right of privacy, use of another's idea in an advertisement,

copyright or trade dress infringement, false arrest, malicious prosecution, and wrongful eviction.[2] None of the "advertising" or "personal injury" offenses that the Garage Liability Policies covers is at issue in this case.

Moreover, the Class Action Petition does not allege an "occurrence." The Garage Liability Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Missouri courts further define the term "accident" in the liability insurance context to mean "that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual or unforeseen." *Koch Eng'g Co., Inc. v. Gibralter Cas. Co., Inc.*, 78 F.3d 1291, 1293 (8th Cir. 1996). More specifically, "Missouri courts have routinely defined the term [accident] in the context of insurance contracts as: An event that takes place without one's foresight or expectation; an undersigned sudden and unexpected event. Hence, often an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as to die by accident." *Hampton v. Carter Enterprises, Inc.*, 238 S.W.3d 170, 175 (Mo. App. 2007). Further, Missouri courts have expressly held that when a "liability policy defines occurrence as meaning accident Missouri courts consider this to mean injury caused by the ***negligence*** of the insured." *Stark Liquidation*, 243 S.W.3d at 393 (citing *Wood v. Safeco Ins. Co. of Am.,* 980 S.W.2d 43, 49 (Mo. App. 1998)(emphasis added)).

Although there are no Missouri cases that are factually similar, there are analogous cases discussing whether claims of fraud and loss of use of a vehicle from wrongful repossession can be considered an "occurrence." For instance, the Missouri Court of Appeals has held that there was no "occurrence" when an insured wrongfully repossessed a truck despite knowledge that another party had a superior security interest in the truck. *Federated Mut. Ins. Co. v. Madden Oil Co., Inc.,* 734 S.W.2d

---

[2] The policies for 2005-2006, 2006 to 2007, and 2007 to 2008 contain no advertising injury or personal injury coverage.

258 (Mo. App. 1987). The policy defined "occurrence" as an accident resulting in bodily injury or property damage neither expected nor intended from the standpoint of the insured. *Id.* at 259. Relying on several out-of-jurisdiction cases, the court held the resulting loss of use was expected or intended from the insured's standpoint and, as such, there was no coverage. *Id.* at 261, 263.

Further, the United States District Court for the Eastern District of Missouri has found no coverage when the insured, a bank, wrongfully repossessed the debtor's equipment. *Cincinnati Ins. Co. v. Meramec Valley Bank,* 259 F.Supp.2d 922 (E.D. Mo. 2003). In that case, a fraud judgment was entered against the bank. *Id.* at 926. The insurer filed a declaratory judgment action against the insured bank seeking a declaration there was no coverage under the policies. *Id.* at 927. One of the reasons the insurer argued there was no coverage was its argument that there was no "occurrence." *Id.* at 928. The district court agreed with the insurer, finding there was no coverage because of the fraud judgment. *Id.* The court explained that fraud claims do not allege an "occurrence." *Id.*

Likewise, in the present case, no "occurrence" is alleged because there is simply no claim of accidental or negligent conduct. Rather, Martinez alleges K&C charged a "phony" public officials fee with an evil motive or reckless disregard for the rights of others in violation of the MMPA; that K&C included the amount paid to public officials in the disclosed cash price of vehicles in its Retail Installment Agreement in violation of the MVTSA; and that K&C sent an improper Notice of Sale and/or failed to send an explanation of the remaining surplus or deficiency before repossession and disposition of the vehicle in violation of the UCC. Plainly, this is not the type of fortuitous or negligent conduct that Missouri courts have found to constitute an "occurrence" under a liability insurance policy. No accidental conduct is alleged. Rather, the conduct is all volitional, part of an intentional business scheme to enhance profit in the sale of each auto sold by K&C.

Additionally, even if the Class Action Petition could be construed to allege an "occurrence," which it cannot, Martinez has alleged no claim whatsoever of "bodily injury," nor does she allege a

claim for "property damage" arising from an "occurrence" as required for coverage. The Garage Liability Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" as well as the "loss of use of tangible property that is not physically injured." There is no claim in the Class Action Petition that Martinez's vehicle—or any other class member's vehicle—was damaged or that she lost the use of the vehicle because of accidental conduct on K&C's part. The claims in the Class Action Petition concern the information provided to customers in conjunction with the sale of vehicles and the notice provided to customers when K&C repossessed and disposed of their vehicles. There is no allegation of physical damage to the vehicles caused by K&C after the sale. Therefore, the Class Action Petition simply does not present a potentially covered claim for property damage. *See Hartford Ins. Co. of the Midwest v. Wyllie*, 396 F. Supp.2d 1033, 1039-40 (E.D. Mo. 2005) (holding claims for defects existing at the time of sale do not constitute "property damage").

Likewise, the fact that Martinez claims K&C improperly repossessed and disposed of her vehicle does not bring the claims in the Class Action Petition within the ambit of the "property damage" definition. The claims in the Class Action Petition are for misrepresenting the public official fee and for defects in the Notice of Sale—and not for the loss of use of any vehicles. Indeed, the trial court in the Underlying Action entered summary judgment for the Class Action Plaintiffs based upon the inadequate presale notice—and not the dispossession of any vehicles.

Further, although there is no Missouri case directly on point, other jurisdictions have universally held that the loss of use caused by repossession due to nonpayment or violation of a financing agreement does *not* constitute "property damage" under liability insurance policies. *See, e.g., City of Burlington v. Ass'n of Gas & Elec. Ins.*, 751 A.2d 284, 291 (Vt. 2000); *Mack v. Nationwide Mut. Fire Ins. Co.*, 517 S.E.2d 839, 841 (Ga. Ct. App. 1999). Further, even if repossession could be considered "property damage," it is not "property damage arising from an "occurrence" because

there is no allegation—nor could there be—that K&C repossessed the vehicle *accidentally*. *See, e.g.,* *Hampton*, 238 S.W.3d at 175 (setting forth what constitutes "accidental" conduct potentially covered by a liability policy).

In short, the above-referenced portions of the Garage Liability Policy provide no coverage for any of the three counts alleged in the Class Action Petition. The alleged damages relate solely to the allegedly fraudulent public official fee, the failure to properly account for the fee in the installment agreement, and the allegedly improper Notice of Sale and repossession and disposition of the Class Plaintiffs' vehicles. The Class Action Petition does not allege "bodily injury" or "property damage" arising from an "occurrence," nor does it allege "advertising injury" or "personal injury" arising from a covered offense. Because there is no potential coverage under the terms and conditions of these coverages of the Garage Liability Policy, Owners owes no duty to defend or indemnify K&C Budget Lot for the Class Action Petition.

## F. There is no coverage under the CGL Policy.

The CGL Policy, like the Garage Liability Policy, provides coverage only for legal liability incurred as a result of "bodily injury" or "property damage" caused by an "occurrence" or "personal injury" or "advertising injury" caused by a covered offense. The "personal injury" and "advertising injury" definitions in the CGL Policy are substantially similar to the definitions of those terms in the Garage Liability Policy and include claims of slander or libel, violation of the right of privacy, use of another's idea in an advertisement, copyright or trade dress infringement, false arrest, malicious prosecution, and wrongful eviction. As discussed above, there is simply no claim of a "personal injury" or "advertising injury" in the Class Action Petition.

The CGL Policy contains definitions of "occurrence," "bodily injury," and "property damage" that are nearly identical to the definitions in the Garage Liability Policy. For the reasons stated above, the Class Action Petition does not allege "bodily injury" or "property damage" arising

from an "occurrence" as those terms are defined in the CGL Policy. Because there is no potential for coverage for the claims asserted in the Class Action Petition under the CGL Policy, Owners owes no duty to defend or indemnify K&C under this coverage.

**G.     There is no coverage for the Class Action Petition under the Security Interest E&O coverage.**

K&C has asserted an affirmative defense that it is entitled to coverage under the Dealer's Plus Coverage Package's "Security Interest Errors and Omissions" coverage.[3] That portion of the policy affords coverage in the event K&C fails to "properly record the security interest of the legal owner or lienholder in motor vehicle title papers," and the purchaser sells the vehicle or transfers title "with knowledge of but without regards to those interests" and the "legal owner or lienholder sustains a loss for which they make claim against [K&C]." Here, there is no claim whatsoever in the Class Action Petition suggesting that K&C failed to properly record a security interest in motor vehicle title papers. Absent in any of the three counts of the Petition are any claims for damages based on a claim that K&C failed to record a security interest.

Thus, because none of the allegations in the Class Action Petition concern the recording of security interests, there is no potential coverage under the Owners policy's Security Interest E&O coverage. Accordingly, Owners owes no duty to defend or indemnify K&C under the Security Interest E&O coverage part.

**H.     There is no coverage for the Class Action Petition under the Insurance Agents E&O coverage.**

K&C also asserted an affirmative defense that it is entitled to coverage under the Dealer's Plus Coverage Package's Insurance Agents E&O Coverage. As with the Security Interest E&O

---

[3] In the policies for 2005 to 2006, 2006 to 2007, and 2007 to 2008, the referenced E&O coverages are found in SECTION VI – OPTIONAL COVERAGES, but are referred to in the declarations page as the "Premier Dealer Plus Coverage Package." For simplicity, we refer to these coverages as part of the Dealer's Plus Coverage Package, which is how they are referenced in the later policies.

coverage, there is no potential argument for coverage under the Owners Insurance Agents E&O coverage. This coverage applies to sums K&C becomes legally obligated to pay because of errors and omissions resulting from K&C's conduct as an automobile physical damage, credit disability income and/or credit life **insurance agent**. "Insurance agent," in turn, is defined as a person or organization licensed as an agent or broker in the jurisdiction in which K&C sells or services insurance and is an **employee** of K&C.

Here, there is no claim that K&C acted as an insurance agent at any time or in any manner. Therefore, as there is no potentially covered insurance agent E&O claim, Owners owes K&C no coverage under this coverage part.

**I.     There is no coverage for punitive damages or statutory penalties under any of the coverage forms issued by Owners to K&C.**

Any claim of punitive damages or statutory penalties is also barred for the reasons set forth above. In addition, Missouri's courts have repeatedly held that punitive damages, penalties, and fines are not a form of legal liability covered by liability insurance in the absence of an express provision affording such coverage. *See, e.g., Farmland Indus. Inc. v. Republic Ins. Co.,* 911 S.W.2d 505 (Mo. 1997); *Heartland Stores, Inc. v. Royal Ins. Co.*, 815 S.W.2d 39 (Mo. App. 1991); *Schnuck Markets, Inc. v. Transamerica Ins. Co.*, 652 S.W.2d 206 (Mo. App. 1983); *Crull v. Gleb*, 382 S.W.2d 17, 23 (Mo. App. 1964); and *State Farm Fire & Cas. Co. v. National Research Center for College and University Admissions*, 445 F.3d 1100, 1103–04 (8th Cir. 2006) (applying Missouri law).

In *Schnuck Market*, for instance, the Missouri Court of Appeals held there was no coverage for a punitive damage claim in a policy that provided coverage "for bodily injury" and "for personal injury." 652 S.W.2d at 209. In so holding, the Court offered the following analysis:

> Punitive damages are not in the same category as damages "for bodily injury" or "for personal injury." The chief purpose of punitive damages is punishment to the offender, and a deterrent to similar conduct by others. Punitive damages are never awarded as compensation. They are mere incidents to the cause of action and are considered separate and apart from and in addition to the assessment of actual

damages. While actual damages are measured by the extent of the injury, punitive damages are measured by the extent of the malice of the actor. Since punitive damages are never awarded merely because of a "bodily injury" or "personal injury" but only when the actor's conduct displays the requisite malice, we find they are not in the category of damages for "bodily injury" or "personal injury."

*Id.* at 209-210 (citations omitted).

Similarly, in *Farmland Industries*, a "property damage" case involving environmental pollution, the Missouri Supreme Court held that "fines or penalties are not included within the ordinary meaning of 'damages.'" 941 S.W.2d at 511. Citing WEBSTER'S DICTIONARY, the Court noted that "[t]he ordinary meaning of a 'fine' or 'penalty' is not compensation or reparation for an injury; rather, it is a sum imposed as punishment." *Id.* The Court also found that the limitation in the policy that there is only coverage for "damages" was significant because "the term limits liability under the policy to something less than 'all sums which the insured shall become legally obligated to pay because of property damage.'" *Id.*

In the MMPA claim set forth in the Class-Action Petition, Martinez and the class members seek punitive damages. Any punitive damages recovered in the class-action lawsuit would not be damages "for" "bodily injury," "property damage," "personal injury," or "advertising injury." Rather, as noted in *Schnuck Markets*, they would be awarded merely to punish K&C for its allegedly intentional and malicious conduct. Specifically, as to the MMPA claim, these damages are sought because K&C allegedly falsely represented that it was paying an amount to public officials that it was not paying and that these representations were made with evil motives to cheat Martinez and the class members.

Similarly, Martinez and the class plaintiffs seek statutory penalties under the MVTSA because K&C allegedly included false information in its retail installment agreements. Likewise, they seek statutory penalties under the UCC for alleged defects in the presale and postsale notices. The logic of *Schnuck Markets* applies to these claims as well. Moreover, under *Farmland Industries*, there

would be no coverage because statutory penalties are simply not "damages" as required to trigger coverage under all of the Owners policies issued to K&C.

These same principles apply with vigor to the specialty errors and omissions coverages for insurance agent and security interests under the Owners policies. These coverage parts provide discrete and limited insurance coverage for compensatory damages flowing from specially enumerated acts. The insurance agent E&O coverage is available only for damages for errors and omissions that occur because of K&C's conduct in selling automobile physical damage, credit disability income, and credit life insurance policies. The security interest E&O coverage is limited to providing coverage for compensatory damages that the coverage part defines as the lesser of the actual cash value of the auto or the outstanding lien balance that K&C becomes legally obligated to pay as damages to the legal owner or lienholder because of its errors and omissions in recording a security interest. Neither coverage part extends coverage for punitive damages or fines and penalties under any circumstance, much less punitive damages and penalties flowing from K&C's unlawful sales and financing practices in charging an improper public officials fee.

Simply put, even if there was coverage for the claims in the Class-Action Petition, there would be no coverage for any award of punitive damages or statutory penalties. Therefore, Owners is entitled to a declaration that there is no coverage for punitive damages and/or statutory penalties under its policies issued to K&C.

## IV. CONCLUSION

As Owners has established that it is entitled to judgment as a matter of law on its Complaint for Declaratory Judgment for the coverages addressed herein, and that the above-referenced affirmative defenses asserted by Martinez and K&C lack merit, this Court should enter partial summary judgment for Owners and declare that it owes no duty to defend or indemnify K&C for the claims brought by Martinez and the class plaintiffs in the Class Action Petition under the CGL

Policy, under the Garage Liability Policy's "bodily injury," "property damage," "advertising injury," or "personal injury" coverages, or under the insurance agents and security interests E&O coverages.

Respectfully submitted,

BROWN & JAMES, P.C.

/s/ Patrick A. Bousquet
Russell F. Watters, #25758MO
T. Michael Ward, #32816MO
Patrick A. Bousquet, #57729MO
Attorneys for Plaintiff
Owners Insurance Company
1010 Market Street, 20th Floor
St. Louis, Missouri 63101-2000
314-421-3400
314-421-3128 – FAX
pbousquet@bjpc.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 25, 2012, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's CM/ECF system upon all counsel of record.

/s/  Patrick A. Bousquet

9676051