## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| OWNERS INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-01050-CV-W-SOW |
| v. | ) | |
| | ) | |
| K&C BUDGET LOT, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT K & C BUDGET LOT, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF OWNERS INSURANCE CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now Defendant K&C Budget Lot, LLC, and pursuant to F.R.C.P. 56 and Local Rule 56.1, together with its Response to Plaintiff Owners Insurance Co.'s Statement of Uncontroverted Facts and Additional Statement of Uncontroverted Facts, filed contemporaneously herewith and incorporated by reference herein, offers the following Response in Opposition to Plaintiff Owners Insurance Co.'s Motion for Partial Summary Judgment:

## I.      Introduction

Plaintiff Owners Insurance Co. ("Owners") insured defendant K&C Budget Lot, LLC ("K&C") under two separate commercial insurance policies: (i) a Commercial Property Damage and Commercial General Liability Policy bearing policy number 964605-07404471(the "CGL Policy"), and (ii) a Premier Garage Liability Policy with Dealers Plus Coverage bearing policy number 96-404-47-01 (the "Garage Liability Policy"). (*Statement of Uncontroverted Fact* ("*SOUF*") ¶¶ *10-11*). The CGL Policy was initially issued to K&C for the coverage period from March 19, 2003 through March 19, 2004 ("03/04") and was renewed for four additional,

1

consecutive one-year periods of coverage (04/05, 05/06, 06/07, and 07/08). (*SOUF ¶10*). The Garage Liability Policy, which includes separate coverage for Security Interest Errors and Omissions, Insurance Agents Errors and Omissions, and Truth-In-Lending Errors and Omissions, was initially issued to K&C for the coverage period from March 19, 2005 through March 19, 2006 ("05/06") and was renewed for six additional, consecutive one-year periods of coverage (06/07, 07/08, 08/09, 09/10, and 10/11). (*SOUF ¶12*).

On April 27, 2009, separate defendant Rachelle Martinez ("Martinez") filed a petition on behalf of herself and as class representative in the Circuit Court of Jackson County, Missouri against K&C (the "Underlying Lawsuit"). (*SOUF ¶¶1, 18*). The Petition sets forth three counts against K&C: Count I – Violations of the [Missouri] Merchandising Practices Act; Count II – Violation of the [Missouri] Motor Vehicle Time Sales Act; and Count III – Violation of the Uniform Commercial Code Requirements. (*SOUF ¶¶1-5*; *Plaintiff's Exhibit M*)

K&C notified Owners of the claims asserted against it in the Underlying Lawsuit, and by letter dated May 26, 2009, Owners acknowledged receipt of the summons packet and advised K&C the summons was forwarded along to defense counsel retained by Owners to defend K&C in the action without setting forth any reservation of rights challenging or reserving the right to challenge the existence of coverage of the claims asserted in the Underlying Lawsuit under any provision of either the CGL Policy or the Garage Liability Policy. (*SOUF ¶19*). Counsel engaged by Owners to defend K&C entered his appearance and filed an Answer on behalf of K&C on July 1, 2009, and since that time has defended, and continues to defend, K&C. (*See, SOUF ¶22; Defendant's Exhibit U – Docket Entry for Case No. 0916-CV13710 – Rachelle Martinez v. K&C Budget Lot, LLC*). Three classes of plaintiffs were certified on June 30, 2010 in the underlying lawsuit (*SOUF ¶6*), and partial summary judgment has been granted to the Class 2 plaintiffs on

Count III (*SOUF ¶7*) and to the Class 1 plaintiffs on Count II (*SOUF ¶8*).

Despite accepting K&C's tender of coverage and providing an unqualified defense, Owners sent a belated reservation of rights letter dated February 22, 2011 to K&C, advising that coverage existed, if at all, solely under the Garage Liability Policy's Truth-In-Lending E&O coverage provisions, despite its previous agreement to defend without reservation sent almost 21 months prior. (*SOUF ¶20*).

Owners presently asks this Court to declare Owners "owes no coverage for the claims in the underlying class-action lawsuit" under the CGL Policies or the Security Interest E&O, Insurance Agents E&O or liability portions of the Garage Liability Policies. However, as discussed below, the Underlying Lawsuit remains pending in the state court, therefore, the issue of Owners' duty to indemnify is not yet ripe for consideration. Further, to the extent the Court finds the matter ripe, the allegations set forth in the underlying petition are sufficient to trigger coverage under the several Owners policies. Additionally, Owners is estopped from now denying coverage after providing K&C an unconditional defense without reservation. Finally, K&C waived its right to contest coverage by agreeing to defend the claims against K&C without reserving any right to challenge or contest coverage. Owners' prayer for partial summary judgment is therefore inappropriate, and K&C requests the Court so find.

## II.  Argument

### A.  Summary Judgment Standard

In considering a motion for summary judgment, all facts and inferences are viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Further, the moving party bears the burden to establish both the absence of any genuine issue of material fact and that it is

entitled to judgment as a matter of law. *Fed. R. Civ. P. 58; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, at the summary judgment stage, it is not for the Court to weigh the evidence and decide the truth of the matter, "but rather [the Court] must only determine if there is a genuine issue for trial." *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 300 F.Supp.2d 888, 892 (E.D.Mo. 2004) (citations omitted).

### B. General Principles of Insurance Policy Interpretation

Missouri law imposes a strong policy of interpreting insurance policies such that coverage is granted rather than defeated. *Farm Bureau Town & Country Ins. Co. of Mo. v. Schmidt*, 751 S.W.2d 375, 376 (Mo. 1998); *see also, Penn Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 596 (Mo.App.W.D. 2010) (holding that insurance policies should be "interpreted to grant coverage rather than defeat it"). This is not an arbitrary rule, rather, it stems from the principle that an insurer should not benefit from ambiguity or lack of clarity in the policy it wrote and sold to its insured. *See, Arnold v. Amer. Family Mut. Ins. Co.*, 987 S.W.2d 537, 541 (Mo.App.W.D. 1999) (court refused adoption of restrictive definition of "legal representative" proffered by the insurer "by construing ambiguous, technical language in favor of the insurer who wrote the policy, and in so doing, nullify[ing] its clearly apparent intendment").

In Missouri that an insurance policy must be interpreted according to the meaning "an ordinary person of average understanding would have when purchasing insurance." *Keck v. Amer. Family Mut. Ins. Co.*, 299 S.W.3d 63, 65 (Mo.App.E.D. 2009). Further, courts do not use "technical, philosophical, or scientific meanings of the terms, nor a restricted meaning acquired in legal usage." *McCormack Baron Management Services, Inc. v. American Guarantee & Liability Ins. Co.*, 989 S.W.2d 168, 171 (Mo. 1999).

4

Though an insured bears the burden of establishing that a loss and damages are covered under an insurance policy, it is the insurer that bears the burden of showing that an exclusion applies to effectively preclude coverage. *Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo.App.E.D. 1998) (citing *Taylor-Morley-Simon, Inc. v. Michigan Mut. Ins. Co.*, 645 F.Supp.596, 599 (E.D.Mo. 1986). Exclusions are strictly construed against the insurer when relied upon to decline coverage. *Burns v. Smith*, 303S.W.3d 505, 510 (Mo. banc 2010). Thus, if reasonably possible, an insurance provision will be construed in favor of coverage. *Dodson Intern. Parts, Inc. v. Nat'l Union fire Ins. Co. of Pittsburg Pennsylvania*, 332 S.W.3d 139, 145 (Mo.App.W.D. 2010).

### C. Duty to defend

An insurer's duty to defend under an insurance policy is broader than its duty to indemnify. *Valentine-Radford, Inc. v. American Motorists Ins. Co.*, 990 S.W.2d 47 (Mo.App.1999). As noted in authority cited by Owners Insurance:

> "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo. banc 1999)*. An insurer's duty to defend a suit against its insured is determined by comparing the language of the insurance policy with the allegations asserted in the plaintiff's petition. *Scottsdale Ins. Co. v. Ratliff, 927 S.W.2d 531, 532 (Mo.App.E.D. 1996)*. The insurer has a duty to defend if the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage. *McCormack Baron Mgmt. Serv., Inc., 980 S.W.2d at 170-71*.
>
> An insurer, however, may not merely rest upon the allegations contained within the petition. *Truck Ins. Exch. V. Prairie Framing, LLC, 162 S.W.3d 64, 83 (Mo.App.W.D. 2005)*. "Rather it must also consider the petition in light of facts it knew or could have reasonably ascertained." Id. "To extricate itself from a duty to defend the insured. The insurance company must prove that there is ***no possibility*** of coverage." *Id. at 79* (emphasis in original; internal citations omitted).

*Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 392 (Mo.App.E.D. 2007).

The court in *Stark Liquidation* concluded its analysis of the low threshold applicable to an insurer's duty to defend by holding, "[a]t the outset of the case, an insurer has a duty to defend if the complaint **merely alleges** facts that give rise to a claim potentially within the policy's coverage. *McCormack Baron Mgmt. Servs., Inc., 989 S.W.2d at 170-71* (emphasis added)."

### D. Determination of Owners' Duty to Indemnify Is Not Presently Ripe for Adjudication

The Eighth Circuit Court of Appeals recently addressed the ripeness of a declaratory judgment action, finding:

> "The ripeness doctrine flows from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Nebraska Pub. Power Dist. v. Midamerican Energy Co., 234 F.3d 1032, 1037 (8th Cir. 2000)*. The doctrine seeks "'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbott Labs. v. Gardner, 387 U.S. 136, 148, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967))*. The ripeness inquiry requires examination of both the "'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *234 F.3d at 1038* (quoting *Abbott Labs., 387 U.S. at 149*). To be ripe for decision, the harm must have matured enough to warrant judicial intervention. *Johnson v. Missouri, 142 F.3d 1087, 1090 n. 4 (8th Cir. 1998)*.

*Paraquad, Inc. v. St. Louis Housing Authority*, 259 F.3d 956, 958 (8th Cir. 2001).

Owners asks the Court to declare its obligation to indemnify K&C under the numerous Owners insurance policies with respect to the claims presented in the Underlying Lawsuit. However, "[t]he duty to indemnify is determined by the facts as they are established at trial or as they are *finally determined* by some other means, such as summary judgment." *Penn-Star*, 306 S.W.3d at 601 (emphasis added). While the Class Two plaintiffs have been granted summary judgment as to Count III and the Class One plaintiffs have been granted summary judgment as to Count II in the Underlying Lawsuit, (*SOUF ¶¶7-8*), the remaining claims in the Underlying

Lawsuit remain pending and have not yet been reduced to judgment. *See, Defendant's Exhibit V – Docket Sheet*. Further, the partial summary judgment rulings are interlocutory, subject to reconsideration by the trial court pending final disposition, and are not final judgments subject to appellate review. *See, e.g., Penn-America Ins. Co. v. The Bar, Inc.*, 201 S.W.3d 91, 95 (Mo.App.W.D. 2006).

In *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, Universal sought the Court's declaration that it did not have a duty to defend or indemnify any judgments entered in two state court class-actions brought against its insured. *Universal Underwriters Ins. Co.*, 300 F.Supp.2d at 890. The insured argued, *inter alia*, that "a determination of the duty to indemnify is premature until the state suits are resolved." *Id.* After finding Universal had a duty to defend under the terms of the relevant policies issued to its insured, the Court held:

> Further, I need not now decide whether Universal is obligated to indemnify Lou Fusz and West Brothers because this question is premature, and its resolution will depend on the outcome of the underlying state actions. I will enter declaratory judgment in favor of defendants on the duty to defend claim and will dismiss without prejudice the duty to indemnify claim.

*Id.*

The only issue which would be presently ripe, but is not before the Court, would be a challenge to Owners' duty to defend K&C in the Underlying Lawsuit. Owners does not, however, challenge its duty to defend K&C in the Underlying Lawsuit, and has been providing a continuous defense since the issuance of its letter to K&C dated May 26, 2009. (*See, SOUF ¶19; Defendant's Exhibit U*). In accord with *Universal Underwriters, Paraquad* and *Penn-Star*, K&C requests the Court find the coverage issues presented in Owners' Complaint for Declaratory Judgment are not yet ripe, as the claims in the Underlying Lawsuit have not been reduced to final judgment.

### E. Owners Has Waived All Policy Defenses and, alternatively, Is Estopped From Now Asserting All Policy Defenses

The uncontroverted facts establish that Owners provided K&C an unqualified defense under _all_ applicable policies, without reserving _any_ rights to later contest the existence of coverage, less than two months after denying K&C's tender of defense for the claims asserted in the Underlying Lawsuit, and that Owners proceeded to defend K&C in the Underlying Action without reservation for nearly 21 months before issuing a belated reservation of rights letter to K&C dated February 22, 2011, as alleged by Owners in Paragraph 20 of its Statement of Uncontroverted Facts. Controlling Missouri case law confirms Owners cannot now be permitted to contest coverage under the various policies issued to K&C, and K&C requests the Court so find.

In its supporting brief, Owners only partially advises the Court of its handling of the claims brought against K&C in the Underlying Action. It is uncontroverted that Owners issued five separate, consecutive CGL Policies to K&C (_SOUF ¶10_), and that Owners also issued seven separate, consecutive Garage Liability Policies to K&C (_SOUF ¶12_).

On or about February 20, 2009, prior to the filing of the Underlying Lawsuit on April 27, 2009 (_SOUF ¶¶1, 18_), Owners sent to K&C a letter declining coverage for any of the claims asserted by Martinez under the 08/09 Garage Liability Policy only. (_SOUF ¶17; Plaintiff's Exhibit Q_). The declination letter states in pertinent part:

> Owners Insurance Company is the Dealer Blanket/Garage Liability Insurance carrier for K & C Budget Lot, LLC. As such, we have been notified of a suit which has been filed against K & C Budget Lot, LLC by Rachelle Martinez.
>
> It is our understanding, Ms. Martinez is claiming you violated the Uniform Commercial code as it applies to the sale and repossession of motor vehicles. Ms. Martinez is alleging you did not provide her with information which is required by the Uniform Commercial Code.

K & C Budget Lot, LLC carriers a Garage Liability policy, number 9640447101, with effective dates of 03/19/2008 to 03/18/2009. The policy of insurance carried with Owners Insurance Company reads, in part, as follows: [ ]

The allegations made in the suit filed by Ms. Martinez do not allege damages caused by property damage, bodily injury, advertising injury or personal injury as defined in the policy. The allegations in the suit would not be covered under the Insurance Agents Errors and Omissions, Security Interest Errors and Omissions, Truth in Lending Error and Omissions and Odometer and Prior Damage Disclosure Statutes Error and Omissions. Therefore, we will be unable to provide a defense to you for this particular matter.

If you have further information which you feel to be pertinent to this matter please provide it to us immediately for review.

All rights, terms, conditions and exclusions in this policy are in full force and effect and remain completely reserved. No action by any employee, agent, attorney, or other person on behalf of Owners Insurance Company; or hired by Owners Insurance Company on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of this policy.

Shortly after Martinez filed her Petition on April 27, 2009, asserting three counts against K&C (*SOUF* ¶¶1-5; 18), Owners sent a second letter to K&C, dated May 12, 2009, which acknowledges receipt of the Petition filed in the Underlying Lawsuit, and again denies coverage under the 08/09 Garage Liability policy only with respect to the three specific claims pled against K&C in the Underlying Lawsuit. (*SOUF* ¶21; *Defendant's Exhibit U*). The May 12, 2009 letter concludes by stating, "Based on the above information, we must respectfully deny to provide a defense and/or coverage for this matter as it has been presented."

Two weeks later, Owners sent a letter to K&C dated May 26, 2009, in which Owners withdrew its previous declination and agreed to provide K&C a defense. (*SOUF* ¶19). Such letter states Owners' agreement to defend K&C without qualification or any "reservation of rights," whatsoever. (*SOUF* ¶19). The May 26, 2009 letter states <u>in its entirety</u>:

Dear Mr. Cosgrove:

We acknowledge receipt of Summons No. 0916-CV17317, filed in the Circuit Court of Jackson County, Missouri styled Rachelle Martinez on behalf of herself and others similarly situated, Plaintiff vs. K & C Budget Lot, LLC, Defendant.

The summons has been forwarded to the law firm of Polsinelli Shughart. Attorney James Sullivan will make the necessary appearance and will contact you before the date of trial. The attorney's office is located at 120 W. 12th Street, Kansas City, MO and their telephone number is 816-421-3355.

If you have any questions please feel free to call me at 816-554-8111, extension 15.

*Plaintiff's Exhibit S.*

As evidenced by the electronic docket entry sheet affixed as *Defendant's Exhibit V*, Polsinelli Shughart, P.C., entered its appearance as K&C's attorney of record in the Underlying Case on July 1, 2009 and filed an Answer on K&C's behalf that same day. Since the filing of the entry of appearance, counsel retained by Owners to represent K&C has engaged in substantial discovery, responding to at least five sets of interrogatories, three sets of request for production of documents, propounding three sets of interrogatories and deposing Martinez. Additionally, counsel for K&C has prepared and responded to motions for summary judgment and filed amended pleadings.

On or about February 22, 2011, after approximately 21 months of K&C's uninterrupted representation by defense counsel retained and compensated by Owners, separate counsel for Owners directed a letter to K&C's personal counsel to deny the existence of coverage. (*Plaintiff's Exhibit T*). Owners describes the February 22, 2011 letter in the following manner:

After the trial court in the Underlying Action certified the three above-referenced classes, Owners sent another letter, through counsel, on February 22, 2011, confirming its coverage position. This letter reiterated there was no coverage for the claims brought in the Class Action Petition under the Owners Truth-In-Lending E&O coverage, under its Security Interest E&O coverage, under its Insurance Agents E&O coverage, under its Garage Liability Coverage, or under its Commercial General Liability Coverage.

*SOUF* ¶20.

Owners' acknowledgement of coverage and agreement to provide K&C a defense underline(without reservation) as against the claims in the Underlying Lawsuit as set forth in its letter to K&C dated May 26, 2009, coupled with Owners' complete control over the defense of the claims against K&C, precludes Owners from now declining coverage. Owners' agreement to accept coverage and provide a defense underline(without reservation), subsequent to the delivery of its prior letter declining coverage, constitutes a knowing waiver of any contractual right to now deny the existence of coverage, or, at a minimum, estops Owners from denying coverage at this late date in the Underlying Lawsuit.

### i.      Owners is estopped from denying the existence of coverage

Missouri law "is well-settled, however, that "defending an action with *knowledge* of noncoverage under a policy of liability insurance without a non-waiver or reservation of rights agreement…precludes the insurer from subsequently setting up the fact and defense." *Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 765 (Mo. banc 2009) (*quoting Mistele v. Ogle*, 293 S.W.2d at 334; *citing MFA Mut. Ins. Co.*, 485 S.W.2d at 402). In *Kinnaman-Carson*, the Missouri Supreme Court noted that an insurer can effect a reservation of rights "when the company provides notice to an insured that its defense of an action should not be construed as a waiver of any policy defense and the insured accepts the defense of the action without protest and with full knowledge of the position of the insurance company of its right to assert non-liability." *Id.* (citations omitted). The court ultimately found that Westport "agreed to defend the underlying personal injury action without a reservation of rights. This foreclosed it from the option of filing a declaratory judgment action to determine coverage." *Id.*

The several cases cited in *Kinneman-Carson* are effectively indistinguishable to the present coverage dispute, each addressing scenarios where an insurer accepts coverage and tenders a defense without reservation only to later attempt to interject a *post hoc* reservation of rights into their initial coverage determination. For example, in *Royle Mining Co.*, the appellate court held an employers' indemnity insurance carrier was estopped from contesting the existence of coverage of a wrongful death claim where the insurer assumed its insured's defense without reservation, employed counsel for its insured and took charge of the defense. *Royle Mining Co. v. Fidelity & Cas. Co. of New York*, 142 S.W. 438, 441-43 (Mo.App. 1911). The court quoted from and adopted another appellate decision, which held:

> "The principal on which defendant should be held liable is that which estops a party from taking a position inconsistent with one previously assumed by him, and to the prejudice of a third person. Defendant will not be permitted to serve one purpose by taking a position, as it did throughout the progress of the McDaniels suit, that the liability of plaintiff was one it would recognize as covered by the policy, and then after using that position to the detriment of plaintiff, change front by denying all liability. *Plaintiff must be presumed to have been prejudiced by such conduct and need not be put to the proof that it could have achieved better results had defendant not interfered.*" (The italics are ours.)

> The presumption of prejudice herein referred to as to the assured being injured by the defense of the McDaniels litigation is not a rebuttable presumption of fact. "The meaning is that as a maxim of jurisprudence one who has done an act cannot allege in defense that he did not also intend that its usual consequences should follow."

*Id.*at 441 (citation omitted).

Similarly, in *Mistele v. Ogle*, the Supreme Court of Missouri found that whether an insurance carrier was estopped from denying the existence of coverage under its policy based on the alleged discovery of new information, after undertaking the complete defense of its insured for two years without reservation, was a matter properly submitted to a jury. *Mistele v. Ogle*, 293 S.W.2d 330 (Mo. 1956). The court first noted that, "[i]t is defending an action with *knowledge* of

noncoverage under a policy of liability insurance without a nonwaiver or reservation of rights agreement that precludes the insurer from subsequently setting up the fact and defenses." *Id.*at 334 (citing 29 Am.Jur., Sec. 878, p. 672; annotations *38 A.L.R. 2d 1148, 81 A.L.R. 1326*; 8 Appleman, Insurance Law, Secs. 4692-4694, pp. 45-70). In considering the insurer's claim of newly-discovered information, which compelled the insurer to revisit its coverage determination and deny coverage, the court ultimately concluded that:

> The inference of the garnishee would have drawn is that it had no knowledge of the facts of coverage until shortly before its attorneys notified Dan and Dale and formally withdrew their representation on September 15, 1952, almost two years after the filing of the suit. But the inference they would have drawn is not the only one reasonably permissible upon this record. Sometime after the principal suit was filed in July 1950 and before their withdrawal in 1952 the facts upon which they relied as demonstrating noncoverage were in their files, if appreciated, or easily discovered had the information as to motor numbers and titles been checked and whether in these circumstances the company was estopped to deny the fact of coverage as to Dan was likewise for the jury to resolve.

*Id.*at 334.

Finally, in *State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.*, a declaratory judgment action, the court addressed State Farm's contention that MFA was estopped from subsequently denying the existence of coverage for a claim for which MFA allegedly provided a complete defense without reservation, stating:

> State Farm's last point is that MFA is estopped to deny liability coverage to Hisaw. This point is bottomed on State Farm's position that the facts are that MFA undertook to defend Hisaw in the Smart damage suit and took complete charge and control of that suit for twenty-one months before denying coverage, all the while knowing there was no coverage under its policy because White had not acquired ownership of the Ford truck being driven by Hisaw at the time of the accident. Of course, if these were the facts, MFA would be estopped from denying coverage. In *Mistele v. Ogle, Mo. 293 S.W.2d 330, 334*, this court said: "It is defending an action with *knowledge* of noncoverage under a policy of liability insurance without a nonwaiver or reservation of rights agreement that precludes the insurer from subsequently setting up the fact and defense."

485 S.W.2d 397, 402 (Mo.banc 1972) (*abrogated on other grounds by statute).*

The uncontroverted facts reveal an uncomplicated timeline regarding Owners' coverage determination on the claims tendered to it by K&C: (i) on February 20, 2009, Owners denied coverage under the 08/09 Garage Liability policy (*SOUF ¶17*); (ii) on April 27, 2009, Ramirez filed her Petition (*SOUF ¶1, 18*); (iii) on May 12, 2009, Owners acknowledged receipt of the Petition and again denied coverage under the 08/09 Garage Liability policy (*SOUF ¶21*); (iv) on May 26, 2009, Owners changed its coverage determination and informed K&C that coverage does and that counsel had been retained, without stating <u>any</u> reservations (*SOUF ¶19*); (v) on July 7, 2009, defense counsel retained by Owners entered his appearance in the Underlying Lawsuit in accord with Owners' May 26, 2009 letter and proceeded to control K&C's defense (*SOUF ¶22*); and (vi) on February 22, 2011, almost 21 months after accepting coverage and providing a defense without reservation, counsel for Owners directed a reservation of rights letter to K&C (*SOUF ¶20*).

The fact patterns presented in *Kinnaman-Carson*, *Rolye Mining*, *Mistele*, and *MFA Mut.* are strikingly similar to the present case, in that the reviewing Missouri courts found the respective insurer was estopped from contesting the existence of coverage after the insurer had previously accepted coverage and tendered a defense without reservation, and had controlled the litigation defense of its insured.

The Authorities cited by Owners in its brief are each factually distinguishable and do not control this case. Specifically, Owners cites *Brown, Lero,* and *Century Fire Sprinklers, Inc.* for the proposition that "policy defenses are not waived where an insurer's coverage letter expressly states the insurer's intention not to waive other defenses not stated therein." In *Century Fire Sprinklers, Inc. v. CAN/Transp. Ins. Co.*, 87 S.W.3d 408 (Mo.App. 2008), the insurer twice declined to defend or indemnify its insured against a lawsuit, and in a subsequent lawsuit filed by

its insured for wrongfully refusing to provide a defense, the insurer was permitted to amend its answer to include a specific policy exclusion, which the insurer relied on in denying coverage, in its answer as an affirmative defense.

In *Lero*, State Farm denied its insured's umbrella policy provided uninsured motorist coverage, and in its summary judgment responsive pleading, identified for the first time a specific policy exclusion State Farm contended expressly excluded coverage for bodily injury or personal injury. *Lero v. State Farm Fire & Cas. Co.*, 2011 Mo.App. LEXIS 1383 at *7 (Mo.App.W.D. Oct. 25, 2011). The appellate court permitted State Farm to raise the exclusion as a defense for the first time in its responsive pleading, in that reliance on the exclusion was wholly consistent with State Farm's determination communicated to the insured that the policy simply did not provide uninsured motorist benefits. *Id.*

Again, in *Brown*, State Farm denied liability coverage under its policy, telling its insured that "this is not a loss as defined by your policy", and when suit was filed against State Farm by its insured, State Farm answered that, "whatever loss was sustained by plaintiff, the same was sustained through the act, procurement or design of plaintiff and/or with plaintiff's full knowledge and consent." *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d at 389. The appellate court found State Farm's specific answer to be wholly consistent with its general denial communicated to its insured, such that the insured could not be found to have relied "to her detriment on the general denial statement contained in State Farm's denial letter; she may not now invoke estoppel." *Id.*

Had Owners stood by its original declination letter of February 20, 2009 denying coverage under the 08/09 Garage Liability policy, the authority cited by Owners may have some relevance. However, it is uncontroverted that Owners elected to withdraw its initial denial of

coverage, electing instead to provide K&C a defense <u>without stating any reservations</u>. In accord

with *Kinneman-Carson*, *Mistele*, *MFA Mut. Ins. Co.*, and *Royle Mining Co.*, Owners is estopped

from now contesting the existence of coverage and its duty to defend under the numerous

policies issued to K&C. In light of the foregoing, K&C respectfully requests the Court deny

Owners' Motion for Partial Summary Judgment with respect to whether Owners is estopped

from contesting coverage under the applicable policies.

ii.      **Owners waived any policy defenses in providing K&C an unqualified defense**

In the alternative, Owners' agreement to provide K&C a defense without setting forth <u>any</u>

reservations after sending K&C two letters declining coverage under the 08/09 Garage Liability

Policy constitutes a waiver of the policy defenses Owners now seeks to assert to avoid coverage.

"Waiver is the intentional relinquishment of a known right," and "may be expressed or implied

by conduct that clearly and unequivocally shows a purpose by the insurer to relinquish a

contractual right." *Morgan v. State Farm Fire & Cas. Co.*, 344 S.W.3d 771, 777 (Mo.App.S.D.

2011) (quoting *Whitney v. Aetna Cas. & Sur. Co.*, 16 S.W.3d 729, 733 (Mo.App.E.D. 2000).

Again, in Missouri, "[i]t is well-settled…that "defending an action with *knowledge* of

noncoverage under a policy of liability insurance without a non-waiver or reservation of rights

agreement…precludes the insurer from subsequently setting up the fact and defense." *Kinnaman-

Carson*, 283 S.W.3d at 765 (quoting *Mistele*, 239 S.W.2d at 334).

In *Brown v. State Farm Mut. Auto Ins. Co.*, the Missouri Supreme Court addressed in

detail the issue of waiver, noting:

> It is the insurer's unequivocal conduct, knowingly contrary to the claim
> provisions of its contract, that betrays the insurer's purpose to relinquish its right
> to rely on the contractual language. See *Block v. Guaranty Co., 316 Mo. 278, 290
> S.W. 429, 437* (banc 1926). ("If the terms of the policy have been waived by the
> conduct and course of business of the insurance company, they no longer
> constitute any part of the policy…"); and *Mistele v. Ogle, 293 S.W.2d 330, 334*

*(Mo. 1956).* ("It is defending an action with knowledge of noncoverage under a policy of liability insurance without a non-waiver or reservation of rights agreement that precludes the insurer from subsequently setting up the fact and defense.") (Emphasis in original).

…

Prejudice plays no part in long-accepted definitions of waiver; it is the voluntary relinquishment of the right to rely on the contractual provision which forms the basis of the waiver.

*Brown*, 776 S.W.2d at 387-88.

Applying *Brown* and *Kinnaman-Carson* to the present action, Owners waived any policy defense to the existence of coverage in accepting K&C's tender of defense and providing K&C an unqualified defense. As discussed above, Owners sent two letters to K&C declining coverage under the 08/09 Garage Liability Policy, one on February 20, 2009 (sent prior to the filing of the Underlying Lawsuit) and another on May 12, 2009 (sent after the filing of the Underlying Lawsuit). After twice declining coverage, Owners reconsidered its coverage position, and on or about May 26, 2009, sent K&C a letter acknowledging receipt of the Petition in the Underlying Lawsuit and advising K&C that Owners was providing K&C a defense without setting forth <u>any</u> reservations or qualifications of its tender of defense, finally advising K&C that unless K&C had any questions for the retained counsel, K&C should expect to next hear from Owners' retained counsel advising of a trial date.

Owners' detailed declination letters dated February 20, 2009 and May 12, 2009 show that Owners had knowledge of potential policy defenses several months before preparing its May 26, 2009 letter advising K&C it was going to provide a defense without citing any reservations. Based on the preceding, Owners has waived all policy defenses to coverage under the numerous CGL Policies and Garage Liability Policies, and K&C requests the Court so find.

**F. Coverage Arguably Exists Under the Several Garage Liability Policies and Commercial General Liability Policies for "Property Damage"**

Interpreting the potential coverage of the claims asserted against K&C in the Underlying Lawsuit in such a way, where possible, "to grant coverage rather than defeat it," *Penn Star*, 306 S.W.3d at 596, coverage arguably exists under the numerous Garage Liability Policies and CGL Policies issued by Owners, therefore, summary judgment in favor of Owners is not proper. Because of the close similarity of the insuring agreements in the various CGL Policies and the Garage Liability Policies, coverage of the claims set forth in the Underlying Lawsuit under the respective policies' "property damage" provisions are addressed together.

The relevant language of the Garage Liability Policies concerning property damage states as follows:

**SECTION I – DEFINITIONS**
…
**R. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
…
**W. Property damages** means:
 1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
 2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **occurrence** that caused it.
…
**1. COVERAGE**
 **a. Bodily Injury And Property Damage Liability (Other Than Auto)**
  **(1) We** will pay those sums that you become legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend **you** against any **suit** seeking those damages. [ ]

  **(2)** This insurance applies to **bodily injury** and **property damage** only if:
   **(a)** The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;
   **(b)** The **bodily injury** or **property damage** occurs during the policy period;… [ ]

The relevant language of the CGL Policies concerning property damage states as follows:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance

18

applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. [ ]

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" occurs during the policy period; [ ]

…

**SECTION V – DEFINITIONS**

…

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful condition.

…

18. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The Petition in the Underlying Lawsuit alleges, *inter alia,* that K&C errantly repossessed the vehicles of Martinez as well as the vehicles of the Class Plaintiffs, and that said Plaintiffs incurred monetary damages stemming from the improper actions of K&C during said repossessions. (*See, Plaintiff's Exhibit M, ¶¶1, 6-9*). The allegedly improper deprivation of the Plaintiffs' use and enjoyment of their respective vehicles on account of K&C's repossession of these vehicles without first satisfying Missouri's statutory requirements governing vehicle repossessions places the alleged damages squarely within the Garage Liability Policy and CGL Policy definitions of **property damage**. K&C is accused of committing statutory violations prior to, during and after the repossession of the Plaintiffs' autos, which resulted in loss of use of tangible property not physically injured. The several Garage Liability Policies and CGL Policies cover the precise type of property damage alleged in the Underlying Lawsuit, leaving only Owners' contention that such loss does not constitute an "occurrence."

The Garage Liability Policies and CGL Policies define occurrence as "an accident." This definition has been construed numerous times by Missouri courts to mean an event that is not expected or intended from the standpoint of the insured. "The determinative inquiry into whether

there was an 'occurrence' or 'accident' is whether the insured foresaw or expected the injury or damages. While an 'accident' does not include expected or foreseeable damage, it is also true that an 'accident' is not necessarily a sudden event; it may be the result of a process.'" *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 905 (Mo. 2010) (citing *Columbia Mut. Ins. Co. v. Eptsein*, 239 S.W.3d 667, 672 (Mo. App. 2007).

Again, the Petition in the Underlying Lawsuit alleges K&C of <u>reckless behavior</u> in violation of the Missouri Merchandising Practices Act (*See, Plaintiff's Exhibit M, ¶19*) and of preparing defective pre-sale and post-sale notices with respect to the repossessed vehicles. *(See, Plaintiff's Exhibit M, ¶¶13, 24)*. The alleged errant actions fall within the case law definition of "accident" such that the injuries alleged in the Underlying Lawsuit are properly classified as "occurrences," triggering coverage under the numerous Garage Liability Policies and CGL Policies.

Authority cited by Owners is based on circumstances neither relevant nor sufficiently similar to the underlying claims to control this action. Specifically, Owners' citation to *Federated Mut. Ins. Co. v. Madden Oil Co., Inc.* 734 S.W.2d 258 (Mo.App. 1987) is misplaced, in that the insured in that case repossessed a truck with <u>actual knowledge</u> that another party had a superior security interest in the truck. The allegations against K&C are that they errantly prepared documents related to the repossession of the various vehicles. These allegations fall far short of the actual knowledge possessed by the insured in *Madden Oil* which compelled the reviewing court to declare the incident did not constitute an "occurrence." Further, in *Cincinnati Ins. Co. v. Meramec Valley Bank*, 259 F.Supp.2d 922 (E.D.Mo. 2003), the insured bank had a fraud judgment entered against it, necessarily requiring a finding of knowledge of the underlying malfeasance. Here, there is no such allegation in the Underlying Lawsuit that K&C acted in such

a knowing manner.

Again, "[i]t is important to note that insurance policies are designed to provide protection and will be liberally interpreted to grant, rather than deny, coverage." *Poage v. State Farm Fire & Casualty Co.*, 203 S.W.3d 781, 783-84 (Mo.App. 2006). Where the insuring agreement states that Owners "will pay those sums that **you** [K&C] become legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies…" and where a substantial portion of the claims alleged in the Underlying Lawsuit relate to the actual or threatened loss of use, *i.e.*, repossession, of the plaintiffs' vehicles, coverage under the Garage Liability Policies is triggered, and K&C respectfully requests the Court find accordingly.

### G. Coverage May Exist Under the Security Interest Errors and Omissions Endorsements Set Forth in the Several Garage Liability Policies

Interpreting the potential coverage of the claims asserted against K&C in the Underlying Lawsuit in such a way, where possible, "to grant coverage rather than defeat it," *Penn Star*, 306 S.W.3d at 596, coverage arguably exists under the numerous Garage Liability Policies and CGL Policies issued by Owners, therefore, summary judgment in favor of Owners is not proper. The specific language of the Security Interest E&O Liability Coverage contained in the Garage Liability Policy states as follows:

**Coverage**

The Company will pay damages the insured is legally obligated to pay to the legal owner or a lienholder of an automobile sold by the insured during the policy term if:

(1) The insured is responsible for recording, but fails to properly record in the motor vehicle title papers for such automobile, the security interest of the legal owner or lienholder; and
(2) The purchaser then sells the automobile or transfers the title with knowledge of such security interest, but fails to protect that interest; and
(3) The legal owner or lienholder then sustains a loss for which they make claim against the insured

The Petition in the Underlying Lawsuit alleges, *inter alia*, that (i) K&C violated various UCC statutes in K&C's failure to send the numerous Plaintiffs adequate, proper and sufficient notice of K&C's intended disposition of their vehicles, and (ii) K&C failed, and continues to fail, to satisfy pre-sale and post-sale notice requirements set forth in relevant UCC statutes with respect to the intended disposition of the various plaintiffs' vehicles. *See, Plaintiff's Exhibit M, ¶¶1, 13*. While the underlying plaintiffs are not lienholders who claim to have sustained damage because their lien interest was impaired, they are, however, "legal owners" and, as noted above, their claims pertain to the manner in which K&C sought to protect its lien interest in their vehicles (*i.e.*, the right to repossess those vehicles and recover any deficiencies in the difference between the resale price of the vehicles upon repossession and the amounts due on the plaintiffs' loan).

Again, "[i]t is important to note that insurance policies are designed to provide protection and will be liberally interpreted to grant, rather than deny, coverage." *Poage v. State Farm Fire & Casualty Co.*, 203 S.W.3d 781, 783-84 (Mo.App. 2006). Where the insuring agreement states that Owners "will pay damages the insured is legally obligated to pay to the legal owner or a lienholder of an automobile sold by the insured during the policy term…" and where the claims alleged in the Underlying Lawsuit seek damages arising from K&C's failure to satisfy various UCC statutes in conjunction with the various plaintiffs' security interest in their respective vehicles, coverage under the Security Interest E&O Liability Coverage contained in the Garage Liability Policy is triggered, and K&C respectfully requests the Court find accordingly.

**H. The Statutory and Punitive Damages Sought in the Underlying Lawsuit Against K&C are Covered "Damages" As Set Forth in the Numerous CGL Policies and Garage Liability Policies.**

The damages prayed for by the plaintiffs in the Underlying Lawsuit fall within the covered damages as set forth in the insuring agreements of the CGL Policies and Garage Liability Policies, and summary judgment should therefore be denied. Specifically, the CGL Policies' insuring agreement provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

The Garage Liability Policies provides, with respect to property damage, that Owners agrees:

> To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law…

and the Security Interest Errors & Omissions coverage in the Garage Liability Policies provides that:

> The Company will pay damages the insured is legally obligated to pay to the legal owner or a lienholder of an automobile sold by the insured during the policy term…

The plaintiffs in the Underlying Lawsuit seek actual damages (Counts I, II, and III), statutory damages (Count III), punitive damages (Counts I, II, and III) and attorneys' fees (Counts I and II). (*SOUF, ¶1-5; Defendant's Exhibit M, ¶¶18, 22, 25, Relief Requested (b)*). As discussed below, the insuring agreements of the CGL Policies and Garage Liability Policies apply to each form of relief requested.

**i. The actual and statutory damages sought are covered under the policies**

Owners' contention that the actual and statutory damages sought in the Underlying Lawsuit are fines or statutory "penalties" is not supported by controlling and persuasive case law. Again, Count I of the Underlying Lawsuit is brought pursuant to the Missouri Merchandising Practices Act (MMPA), Count II pursuant to the Motor Vehicle Time Sales Act

(MVTSA), and Count III pursuant to Article 9 of the UCC. Addressing MMPA specifically, the

Supreme Court of Missouri recently noted:

> **The merchandising practices act imposes *criminal penalties* and *civil liability***
> on persons who engage in conduct that it deems unlawful. A person who willfully
> and knowingly engages in an unlawful act, as defined by the statute, is guilty of a
> class D felony. *Section 407.020.3*. Additionally, the legislature provides that **any**
> **person who "suffers an ascertainable loss of money or property" as the result**
> **of an unlawful practice may file a civil *lawsuit to recover actual and punitive***
> ***damages, as well as attorney fees***, from any person who has engaged in a method,
> act or practice declared unlawful by *section 407.020. Section 407.025.1*. A class
> action lawsuit is also authorized when the unlawful conduct has caused similar
> injury to "numerous other persons." *Section 407.025.2.* "In any action brought
> pursuant to this section, the court may in its discretion order, in addition to
> damages, in junction or other equitable relief and reasonable attorney's fees." *Id.*

*Huch v. Charter Communications, Inc.*, 209 S.W.3d 721, 725 (Mo. banc 2009) (emphasis
added).

As noted in *Huch*, the relief sought under the MMPA is not a fine or statutory penalty,

but rather seeks relief for <u>actual damages</u>. Owners confuses the relief sought (actual damages)

with the authority under which the plaintiffs seek such relief (statutory right), and the analysis is

the same for Counts II and III. In *Universal Underwriters Ins. Co. v. Lou Fusz Automotive*

*Network, Inc.*, the United States District Court for the Easter District of Missouri recently

addressed the precise issue of whether statutory damages constitute "damages" covered under a

commercial general liability policy, concluding that such damages were covered under the

respective policies. *Universal Underwriters Ins. Co.*, 300 F.Supp.2d 888 (E.D.Mo. 2004).

In *Universal Underwriters*, the insured was sued in state court for violating the

Telephone Consumer Protection Act (TCPA), and after denying coverage, Universal filed a

declaratory judgment action in federal court while the state court claims were still pending,

claiming that "the underlying TCPA violations are not injuries or occurrences under the policies

and that the statutory damages sought in the state court actions are civil penalties and/or intentional acts, which are not covered by the policies." *Id.* at 890, 892-93.

The policy contained the following insuring agreement and definition of "damages":

INSURING AGREEEMNT -- WE will pay all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.
…
"DAMAGES" means amounts awarded by a court of law. With respect to INJURY Group 6, DAMAGES also means amounts awardable by administrative agencies. DAMAGES does not mean civil penalties, fines or assessments.

*Id.* at 891.

The court disagreed with Universal, holding:

The TCPA violations alleged by Stephenson and Onsite do not seek "civil penalties." The policies themselves do not define "civil penalties," but they do include a definition of "damages" as "amounts awardable by a court of law," which is further limited by the caveat that "damages" do not include civil penalties, fines or assessments." [ ] The actual language of the complaints seek the "full amount of statutory damages" allowed under the TCPA, which provides for recovery of "actual monetary loss or to receive $500.00 in damages for each such violation, whichever is greater…" *47 U.S.C. §227(b)(3).* Thus, a remedy offered by the TCPA is actual damages.

[ ] Further, statutory damages such as these, as the Supreme Court has noted in a different context, "serve to liquidate uncertain actual damages and to encourage victims to bring suit to redress violations." [citation omitted]. Interpreting a statutory remedy that covers the greater of actual damages or a liquidated amount as an excluded "civil penalty," as Universal urges, would be counter to the clear admonition of Missouri law to interpret insurance contracts to furnish, rather than to exclude, coverage. *See Centermark Properties, Inc., 897 S.W.2d at 100-01.*

*Id.* at 893-94.

The arguments offered by Owners mirror those made by Universal, and the Court's adjudication of those arguments should be no different than in *Universal Underwriters*. The numerous policies issued by Owners to K&C provide coverage for "damages." The plaintiffs in the Underlying Lawsuit have prayed for actual damages which fall within each policy's insuring

agreement. Additionally, the plaintiffs pray for "statutory damages" which, as discussed in *Universal Underwriters*, constitute "damages" in the context of commercial insurance policies. Based on the preceding, K&C requests the Court deny Owners' Motion for Partial Summary Judgment, and further find that the damages sought in the Underlying Lawsuit are covered under the CGL Policies and the Garage Liability Policies.

## ii. The punitive damages sought in the Underlying Lawsuit are arguably covered by the policies

The Underlying Lawsuit seeks punitive damages for Counts I (MMPA) and II (MVTSA) only, with both prayers being brought pursuant to express statutory language permitting punitive damages for violations of the MMPA and MVTSA, respectively. Therefore, to the extent that such punitive damages are properly classified as "statutory damages", in accord with *Universal Underwrites*, such damages qualify as "damages" under the CGL Policies and Garage Liability Policies.

Owners principally relies on *Schnuck Markets, Inc. v. Transamerica Ins. Co.* in contesting coverage under the policies for punitive damages, in which the Missouri Court of Appeals held, in part, that "[p]unitive damages are not in the same category as damages "for bodily injury" or "for personal injury." The chief purpose of punitive damages is punishment to the offender, and a deterrent to similar conduct by others." *Schnuck Markets, Inc. v. Transamerica Ins. Co.*, 652 S.W.2d 206, 209 (Mo.App.E.D. 1983) (quoting *Crull v. Gleb*, 382 S.W.2d 17, 23 (Mo.App. 1964). However, the *Schnuck* case does not address coverage of punitive damages arising from property damage claims under commercial insurance policies, nor does *Schnuck* address punitive damages awarded under a specific statutory provision where "punishment [of] the offender" is not the underlying rationale for the award.

In determining whether damages are appropriate pursuant to the MMPA (and, presumably, under the MVTSA), the Court is to "examine Dealer's conduct, not his intent, to determine whether a violation has occurred." *Bolt v. Giordano*, 310 S.W.3d 237, 247 (Mo.App.E.D. 2010). As an "evil motive" is not relevant in determining the propriety of an award under the MMPA, the public policy argument against coverage for punitive damages awarded for violations of the MMPA and MVTSA offered in *Schnuck* does not apply here.

Additional support for the existence of coverage for the punitive damages prayers under the CGL Policies and Garage Liability Policies is found in *Colson v. Lloyd's of London*, 435 S.W.2d 42 (Mo.App. 1968). In *Colson*, the insurer contested coverage in a garnishment action for punitive damages awarded against its insured, contending that, pursuant to the *Crull* case (relied on by the court in *Schnuck*), punitive damages were not covered under its policy. *Id.* at 46.

The Court noted that, "the instant policy covers "loss by reason of liability *imposed by law* upon the insured by reason of any false arrest * * *." In other words, the liability does not have to arise out of bodily injury or be accidentally inflicted as was required in the *Crull* case, cited by appellant, but rather covers any "loss * * * *imposed by law." Id.* at 46-47 (emphasis in original). Concluding that the policy did cover punitive damage awards, the Court ultimately held:

> In the well considered opinion by the Supreme Court of Tennessee in the case of *Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639, 383 S.W.2d 1, 5*, the court discusses at length the *McNulty* opinion and says "[ ] The insurance contract in the case at bar is a private contract between defendant and their assured, Norman Frank Cruthfield, which when construed as written would be held to protect him against claims for both compensatory and punitive damages. Then to hold assured, as a matter of public policy is not protected by the policy on a claim for punitive damages would have the effect to partially void the contract. We do not think this should be done except in a clear case, and the reasons advanced do not make such a clear case."

> [ ] Here we are faced with the problem of whether it would be against public policy to permit an association of law enforcement officers to insure themselves against alleged willful and intentional acts. In our opinion, it would not. It would be extremely rare, particularly in a suit for false imprisonment where the insured participates in the restraining or manhandling of the plaintiff, for there not to be an assertion that this was ground for the assessment of punitive damages.

*Id.* at 47.

The insuring agreement in *Colson* is similar to those in both the CGL Policies and the Garage Liability Policies, in that each provides coverage for "damages the insured is legally obligated to pay," and the holding in the instant matter should be analogous to *Colson*. As in *Colson*, where it would be extremely rare for a claim of false imprisonment brought under the relevant policy not to include a prayer for punitive damages, here it would be extremely rare for a claim brought against K&C under the MMPA not to include a prayer for the statutorily-permitted relief of punitive damages. The public policy argument set forth in *Schnuck* has no application for violations of the MMPA where the focus is on the defendant's <u>conduct</u>, as opposed to their <u>intent</u>. In accord with *Colson*, K&C requests the Court find that punitive damages are arguably covered under the CGL Policies and Garage Liability Policies and deny Owners' Motion for Partial Summary Judgment.

## III.  <u>Conclusion</u>

Based on the foregoing, K&C respectfully requests the Court find Owners' request for declaratory judgment is not yet ripe. Owners, in providing K&C a defense in the Underlying Lawsuit, acknowledges it owes K&C a duty to defend pursuant to the CGL Policies and the Garage Liability Policies, and as resolution of the question of Owners' duty to indemnify will depend on the outcome of the Underlying Lawsuit, which has not yet been finally and fully adjudicated, the matter is not yet ripe.

Alternatively, should the Court determine the matter is presently ripe, K&C requests the Court deny Owners request for a declaration that coverage does not exist for the claims brought against K&C in the Underlying Lawsuit under the CGL Policies and Garage Liability Policies, and, alternatively, that coverage under these policies does in fact exist.

Respectfully submitted,

**FOLAND, WICKENS, EISFELDER,
ROPER & HOFER, P.C.**

/s/ *Wm. Clayton Crawford*

WM. CLAYTON CRAWFORD   MO   #41619
CHRISTOPHER J. ZARDA   MO   #60111
911 Main Street, 30th Floor
Kansas City, Missouri 64105
Telephone:   (816) 472-7474
Facsimile:   (816) 472-6262
ccrawford@fwpclaw.com
czarda@fwpclaw.com
***ATTORNEYS FOR DEFENDANT
K&C BUDGET LOT***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was delivered by electronic mail via the ECF notification system on this 13th day of March, 2012, to:

Russell F. Watters
**BROWN & JAMES, P.C.**
1010 Market Street, 20th Floor
St. Louis, Missouri 63101-2000
rwatters@bjpc.com
***Attorney for Plaintiff
Owners Insurance Company***

Dale K. Irwin
1627 Main Street, Suite 900
Kansas City, Missouri 64108
***Attorney for Defendant
Rachelle Martinez, Individually
and as Class Representative***

/s/ *Wm. Clayton Crawford*

***ATTORNEYS FOR DEFENDANT
K&C BUDGET LOT, L.L.C.***