IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.: 4:11-cv-01050-SOW |
| vs. | ) |
| | ) |
| K & C BUDGET LOT, L.L.C., et al. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF OWNERS INSURANCE COMPANY'S REPLY TO
DEFENDANT K&C BUDGET LOT, L.L.C.'S SUGGESTIONS IN OPPOSITION TO
OWNERS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**A.    Owners' Motion for Partial Summary Judgment is ripe for adjudication.**

K&C's primary response to Owners' Motion for Partial Summary Judgment is that the determination of Owners' duty to indemnify is not ripe. K&C correctly notes that the duty to indemnify is typically determined by the facts as they are established at trial or some other means, such as summary judgment. Where K&C's argument misses the mark is in overlooking the well-settled principle that if the allegations of the underlying petition, along with the facts known at the outset of the litigation, do not state a claim that is *potentially* within an insurance policy's coverage, then the insurer owes no coverage—*i.e.*, neither defense *nor* indemnity.

In its motion, Owners seeks a determination that there is no potential for coverage and thus no duty to defend or indemnify K&C for the allegations set forth in the class action lawsuit under certain coverage parts in its policies. Specifically, Owners asks the Court to find there is no potential for coverage under its CGL policies and the portions of its garage liability policies that afford coverage for "bodily injury," "property damage," "personal injury," or "advertising injury." In addition, Owners seeks a determination that there is no potential coverage—and, thus, no duty to defend or indemnify—under the insurance agents errors and omissions ("E&O") and the security

interests E&O coverage forms of its garage liability policies.

K&C claims the only issue ripe for this Court's determination is Owners' duty to defend and that issue is not before the Court because Owners has been affording K&C a defense under the truth-in-lending errors and omissions coverage of its garage liability policies. While it is true that Owners is not presently challenging that it owes a defense under its truth-in-lending coverage, it does not follow that it is prohibited from arguing that its other coverages are not triggered at all such that it owes neither defense nor indemnity under those separate and distinct coverage parts.

As the Missouri Court of Appeals has noted, "[w]hether an underlying petition has alleged a claim that is covered by the terms of the insurance policy is a legal question, which is not dependent on a factual determination of the underlying claims." *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 792 (Mo. App. W.D. 2006). There exists a duty to defend only if the policy provides for defense and the petition, along with the "facts at the outset of the case," show there is a *potential* for coverage. *McCormack Baron Mgm't Servs., Inc. v. American Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999) (emphasis added). It follows that **if there is no *potential* for coverage and, thus, no duty to defend under a particular coverage part, there is no duty to indemnify**. *See Trainwreck West, Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. App. E.D. 2007) (noting that "[w]here there is no duty to defend, there is no duty to indemnify."); *see also Swan Const. Co., Inc. v. Bituminous Cas. Corp.*, 588 F. Supp. 65 (E.D. Mo. 1984) (stating "[i]f there is no duty to defend under the policy, then defendant has no obligation to pay the settlement amount."). Thus, to succeed in its Motion for Partial Summary Judgment, Owners need only show that the allegations of the underlying Class Action Petition, even if true, do not trigger coverage under the policy forms at issue.

K&C relies principally on *Universal Underwriters Insurance Company v. Lou Fusz Automotive Network, Inc.* in arguing that Owners' motion is unripe. 300 F.Supp.2d 888, 890 (E.D. Mo. 2004).

*Universal Underwriters* is inapposite. In that case, the district court determined that the insurer *did*, in fact, have a duty to defend and held that the indemnity determination was not ripe. *Id.* In other words, the court found that the facts alleged in the underlying petition, taken as true, did allege a claim that fell within the policy's coverage and, as such, there was a *potential* for coverage. *Id.* at 894. If, however, the court had found that the underlying petition did not create the potential for coverage, it could have—and should have—determined that the insurer had no duty to indemnify. That is what Owners is asking the Court to do for the coverages addressed in its Motion.

Because Owners seeks a determination that there is no *potential* for coverage for the allegations of the Class Action Petition under the policy forms referenced in its Motion for Partial Summary Judgment, this Court need not await resolution of the underlying action to make that determination. Rather, this Court may properly determine that the allegations in the underlying Class Action Petition simply do not fall within the coverage forms at issue and, therefore, Owners owes no coverage to K&C under those forms.

**B.    Owners has not waived, nor is it estopped from asserting, any policy defenses addressed in its Motion for Partial Summary Judgment**

K&C, in its next attempt to escape the merits of Owners' coverage position, is its claim that K&C has waived or is estopped from asserting all policy defenses. K&C's only basis for its waiver and estoppel arguments is a letter dated May 26, 2009, which was sent **after** Owners expressly and completely reserved all of its rights under its policies for the claims brought in the underlying Class Action Petition. That letter, which Owners attached to its Complaint and Motion, clearly serves as no more than an acknowledgement that, in spite of the coverage issues addressed in its prior correspondence, it was forwarding the Class Action Petition to an attorney for defense. At no point did that correspondence indicate that Owners was "withdrawing" its reservation of rights or declination of coverage as K&C suggests.

3

As the Missouri Supreme Court has noted, waiver requires "the *intentional* relinquishment of a known right" and may only be implied "by conduct that *clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right*." *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. banc 1999) (emphasis added). Estoppel in the insurance context only applies when "(1) the insurer asserted a policy defense in denying coverage and later asserted another inconsistent ground, (2) the insurer's actions induced the insured to rely on the original defense and thereby caused the insured injury, and (3) the insured suffered prejudice as a result of such reliance." *Versaw v. Versaw,* 202 S.W.3d 638, 650 (Mo. App. S.D. 2006) (citations omitted). Further, "[e]stoppel will not be lightly embraced in an insurance coverage case; it only has application when all elements thereof clearly appear." Indeed, as the Missouri Supreme Court has acknowledged, estoppel is an equitable doctrine and applies only when an insurer **unjustifiably** denies coverage. *James v. Paul,* 49 S.W.3d 678, 688 (Mo. banc 2001).

Here, Owners informed K&C of its coverage position in its February 2009 correspondence. Then, despite doubt as to whether there was any coverage for the Class Action Petition, Owners chose to defend K&C and continues to defend K&C to date under the truth-in-lending E&O coverage of its Garage Liability Policies—the only coverage even potentially applicable to the claims in the underlying Class Action Petition. Further, if there was any doubt that Owners was defending under a full reservation of its rights under the policies, any such doubt was eliminated by Owners' letter of February 22, 2011, in which it set forth its coverage position in detail and again asserted its reservation of rights. (*See* Ex. T.) K&C has accepted that defense for over a year and should not be entitled to the equitable doctrine of estoppel based on the flawed premise that it was prejudiced because it was not aware its defense was being afforded under a reservation of rights.

Finally, even if K&C is correct that Owners' May 26, 2009 correspondence evidenced its intent to defend "without reservation," which Owners disputes, Owners is still not barred from asserting the arguments set forth in its Motion for Partial Summary Judgment. Owners is not

4

attempting to rely merely on an exclusion that it would have had the burden to prove. Rather, Owners argues the claims in the underlying Class Action Petition simply do not fall -- even potentially -- within the insuring agreements of the referenced coverages—*i.e.*, the CGL policies, the Garage Liability Policies' coverage for bodily injury, property damage, personal injury, and advertising injury, and the insurance agents and security interests E&O coverages.

It is black letter law in Missouri that the doctrines of waiver and estoppel may not be used to bring a claim within coverage when the risk is not covered by the policy's terms or is expressly excluded therefrom. *Century Fire Sprinklers, Inc. v. CNA/Transportation Ins. Co.*, 87 S.W.3d 408, 417 (Mo. App. W.D. 2002); *St. Louis Trimming, Inc. v. American Credit Indem. Co.*, 113 F.3d 900, 900 (8th Cir. 1997). This is because "estoppel and waiver do not themselves give a cause of action" and "the purpose of estoppel is to preserve rights previously acquired *but not to create new ones*." *Lero v. State Farm Fire and Cas. Co.,* 2011 WL 5041191, at *6 (Mo. App. W.D. Oct. 25, 2011) (emphasis added).

As discussed in detail in Owners' Motion, the underlying Class Action Petition simply does not contain allegations that bring it under the coverage of the CGL Policies, which afford coverage only for an "occurrence" giving rise to "property damage" or "bodily injury" and for certain "advertising injury" and personal injury offenses not at issue. Nor does it contain any allegations bringing under the Garage Liability Policies' coverage for "property damage," "bodily injury," "advertising injury," or "personal injury," or the Garage Liability Policies' E&O coverages for insurance agent services and recording security interests. Those coverages simply have nothing to do with the claims in the underlying action, which relate to K&C's allegedly unlawful sales and financing practices in charging a public official fee to its customers and in failing to give proper notices before repossessing and reselling vehicles. (*See* Exhibit M.)

Taking K&C's waiver and estoppel argument to its logical conclusion and allowing K&C to create coverage under policy forms that objectively do not even potentially cover the claims at issue

5

would have a devastating effect on the insurance industry. Indeed, an insurer agreeing to defend a covered claim would have to disclaim coverage and reserve its rights under every other type of policy it may have issued to an insured or risk a waiver and estoppel defense when the insured argues it was entitled to coverage under other coverage forms not originally addressed by the insurer.

K&C's argument seems even more absurd when considering how it would apply to personal insurance lines as opposed to more complex commercial coverages. For example, insurance companies frequently provide home, life, and auto insurance policies to individuals. Under K&C's argument, when an insured is sued for an auto accident that he or she caused and submits the claim to the insurer, if the insurer decides to defend the case under its auto policy, the insurer must also reserve its rights under the homeowners policy and even the *life insurance* policy to avoid a claim of waiver or estoppel under those coverages. Not only is that concept absurd, it is contrary to the well-established precedent, cited above, that coverage cannot be created through waiver or estoppel.

In support of its waiver and estoppel arguments, K&C relies almost exclusively on the Missouri Supreme Court's decision in *Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 765 (Mo. banc 2009). In *Kinnaman,* however, the insurer agreed to provide a defense after the insured had entered into a consent judgment under MO. REV. STAT. § 537.065 without the insurer's knowledge. *Id.* at 763-64. After expressly agreeing to defend the insured without reservation, the insurer made no attempt to either dispute the settlement agreement before it became final, appeal the settlement, or withdraw its agreement to defend without reservation, despite ample opportunity to do so. *Id.* at 764. Indeed, the Missouri Supreme Court emphasized that the insurer "instead sat silent in the underlying action and did nothing until the [plaintiffs] filed their garnishment action." *Id.* As a result, the Missouri Supreme Court concluded that the insurer had waived its coverage defenses by defending the action without a reservation of rights despite knowledge of noncoverage. *Id.* at 765.

Unlike the insurer in *Kinnaman,* Owners agreed to defend K&C only after it asserted a full and complete reservation of its rights under the policies it issued to K&C *and* at all times actively participated in the defense. (*See* Exhibit R.) Further, Owners never expressly withdrew its reservation of rights. Moreover, even if there is some question as to whether Owners at some point defended K&C without a reservation, it clearly withdrew any agreement to defend without reservation, and K&C has accepted this defense under a reservation of rights for over a year.

There was no clear and unequivocal conduct on Owners' part evidencing an intent to relinquish any rights under its policies. Rather, there was at best uncertainty on K&C's part, which Owners subsequently clarified in its February 22, 2011 letter. Therefore, the well-established governing principle that the doctrines of waiver and estoppel cannot create coverage where it does not exist mandates that Owners has no liability for the claims asserted against K&C in the Class Action Petition under the policy forms referenced in Owners' pending Motion.

The other cases cited by K&C do not compel a contrary conclusion. For instance, *Royle Mining Co. v. Fidelity & Casualty Co. of New York*, in addition to being over 100 years old and of questionable validity in light of the *Century Fire* decision and the other cases holding that coverage cannot be created through estoppel, involved an insurer that was found to have *never* asserted any reservation of rights during the pendency of the underlying lawsuit until after judgment and execution thereon. *Royle Mining Co. v. Fidelity & Cas. Co. of New York*, 142 S.W. 438, 442 (Mo. App. 1911). In this case, K&C admits Owners set forth a full reservation of its rights in February 2009 after it first received notice of the claim and later set forth, in detail, its policy defenses in its reservation of rights letter of February 22, 2011. Further, the insurer in *Royle Mining* was estopped from relying on an *exclusion* in its policy for injury sustained because the insured failed to obey a safety statute, which the insurer had the burden of proving. *Id.* at 445. It was not a circumstance where the underlying suit did not fall within the insurance policy's coverage in the first instance, as is

7

the case with the policy forms at issue here.

K&C also relies on *Mistele v. Ogle*, 293 S.W.2d 330, 334 (Mo. 1956). That case is also distinguishable. In *Mistele*, the insurer never reserved its rights before or while defending the case and, indeed, never asserted its coverage defenses at all until it ultimately withdrew its defense, apparently after leaving its insured to have a default judgment entered against him. *Id.* at 332. Further, there was no question that the claim at issue—an auto claim—was a claim that would have been covered; the issue was whether the vehicle involved in the accident was owned by the insured and, thus a covered vehicle. *Id.* There were also significant factual issues in that case as to when the insurance company knew that the vehicle might not have been owned by the insured such that it was appropriate for a jury to determine whether it waived its argument that the claim was not covered based upon the ownership of the vehicle. *Id.* at 333-34. Those issues are not present here.

The undisputed facts show Owners advised K&C that there were issues as to coverage and reserved its rights upon its first notice of the claim in 2009. There is also no dispute that Owners reiterated its reservation of rights in February 2011, and that K&C has accepted that defense under a reservation for over a year. Further, there is no factual question as to whether the claims in the underlying Class Action Petition fall within the coverages at issue in Owners' Motion for Partial Summary Judgment. Rather, this Court may make that determination by comparing the allegations of the Class Action Petition to the policies. K&C may not use waiver and estoppel to cause those claims to be covered when Owners never contracted to cover such claims under the coverages addressed in its Motion. *See Mistele*, 293 S.W.2d at 333 (noting that if the vehicle was not owned by the insured but by the prior owner, his son, then "the policy did not cover [the son's] liability and could not be made to do so by estoppel.").[1]

---

[1] K&C also relies on *State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.*, 485 S.W.2d 397 (Mo. 1972). That case is another where vehicle ownership was the sole coverage issue. The case is nearly identical to *Mistele* and is similarly distinguishable in that the insurer did not reserve its rights until it denied coverage after having defended

8

In sum, waiver and estoppel do not apply in this case because Owners has at all times made K&C aware of its intention to assert policy defenses and was justified in doing so. Further, even if Owners could be said to have afforded a defense for a period of time without reserving its rights, it reiterated its reservation in detail in a letter sent to K&C in February 2011, and K&C has accepted Owners' defense subject to a reservation of rights since that date. Accordingly, it should not be entitled to the equitable doctrines of waiver and estoppel. Finally, waiver and estoppel cannot be used to *create* coverage where a claim simply does not even potentially fall within the policy's insuring agreement. Therefore, Owners is not barred from arguing that the claims in the Class Action Petition simply do not trigger the coverages at issue.[2]

**C.     To the extent the Court considers K&C's remaining arguments, which vastly exceed the limitations of Local Rule 7.0(f), those arguments lack merit and Owners requests leave to file an supplemental reply in excess of the page limits to address K&C's arguments.**

K&C's arguments addressing the merits of Owners' Motion for Partial Summary Judgment are contained on pages 17 through 29 of its Suggestions in Oppositions. Local Rule 7.0(f) limits K&C to fifteen pages absent the Court's permission to exceed the page limit, which K&C did not request, much less obtain. Further, K&C included its statement of additional facts as a separate document, rather than as part of its Suggestions in Opposition under Local Rule 56.1(a), such that there are no pages of its Opposition that should be omitted from calculation. Therefore, the Court need not consider those arguments. Nonetheless, to the extent the Court would now grant K&C leave to file an over-length Opposition, Owners requests an additional ten pages to reply to these arguments and an additional seven days in which to file a Supplemental Reply.

---

without reservation for 21 months. *Id.* at 402. Moreover, the Court found that the insurer was *not* estopped from denying coverage as it denied coverage shortly after learning that the vehicle was not owned by its insured. *Id.*

[2] K&C makes a separate argument for waiver beginning on page 16 of its Suggestions in Opposition. Because K&C has violated Local Rule 7.0(f) without leave of court, this Court need not consider its argument. Nonetheless, to the extent a response is necessary, Owners notes that its arguments against K&C's estoppel argument apply with equal force to the waiver argument. Indeed, Missouri courts have used waiver and estoppel interchangeably in the context of insurance. *Lineschmidt v. Continental Cas. Co.*, 204 S.W.2d 295, 925-26 (Mo. 1947).

In short, K&C's argument that the allegations in the Class Action Petition fall into the CGL and Garage Liability Policies' "property damage" coverage lacks merit for the reasons stated in Owners' Memorandum in Support at pages 19-24. The claims in the Class Action Petition do not seek damages for "property damage." They relate to K&C's allegedly fraudulent public official fee and for defects in its Notice of Sale—not damage to or loss of use of any vehicles. They also do not allege any accidental conduct and, as such, do not allege an "occurrence." Owners also stands by its arguments regarding the security interest and insurance agents E&O coverages, as set forth in pages 24-25 of its Memorandum in Support. There is simply no claim that K&C failed to properly record a security interest or that it committed an error or omission in its capacity as an automobile physical damage, credit disability income and/or credit life insurance agent as required to trigger those coverages.

Finally, Owners stands by its argument that its policies afford no coverage for punitive damages and statutory penalties, as set forth in pages 25-27 of its Memorandum in Support. K&C's reliance on the *Colson* case is misplaced because the policy in that case did not limit coverage to "damages because of" "property damage" or "damages because of" errors and omissions in recording security interests or performing insurance agent services. 435 S.W.2d 42, 46-47 (Mo. App. 1968). Rather, *Schnuck Markets* and the other cases cited by Owners are dispositive. The fact that punitive damages may be authorized by statute does not change the character of such damages—they are still damages to punish the offender and deter similar conduct and are not damages *for* property damage or errors and omissions. Likewise, the Owners policies do not cover only actual damages and not statutory penalties. Therefore, to the extent K&C may be found liable for punitive damages or statutory penalties, Owners is entitled to a determination that its policies do not cover them.

Respectfully submitted,

BROWN & JAMES, P.C.

/s/ Patrick A. Bousquet
Russell F. Watters, #25758MO
T. Michael Ward, #32816MO
Patrick A. Bousquet, #57729MO
Attorneys for Plaintiff
1010 Market Street, 20th Floor
St. Louis, Missouri 63101-2000
314-421-3400
314-421-3128 – FAX
pbousquet@bjpc.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 13, 2012, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's CM/ECF system upon all counsel of record.

/s/ Patrick A. Bousquet

9781239