IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 4:11-cv-01050-SOW |
| vs. | ) | |
| | ) | |
| K & C BUDGET LOT, L.L.C., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF OWNERS INSURANCE COMPANY'S REPLY TO
DEFENDANT K&C BUDGET LOT, L.L.C.'S SUGGESTIONS IN OPPOSITION TO
OWNERS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**A.      Owners' Motion for Partial Summary Judgment is ripe for adjudication.**

K&C's primary response to Owners' Motion for Partial Summary Judgment is that the

determination of Owners' duty to indemnify is not ripe.   K&C correctly notes that the duty to

indemnify is typically determined by the facts as they are established at trial or some other means,

such as summary judgment.   Where K&C's argument misses the mark is in overlooking the well-

settled principle that if the allegations of the underlying petition, along with the facts known at the

outset of the litigation, do not state a claim that is *potentially* within an insurance policy's coverage,

then the insurer owes no coverage—*i.e.*, neither defense *nor* indemnity.

In its motion, Owners seeks a determination that there is no potential for coverage and thus

no duty to defend or indemnify K&C for the allegations set forth in the class action lawsuit under

certain coverage parts in its policies.  Specifically, Owners asks the Court to find there is no potential

for coverage under its CGL policies and the portions of its garage liability policies that afford

coverage for "bodily injury," "property damage," "personal injury," or "advertising injury."   In

addition, Owners seeks a determination that there is no potential coverage—and, thus, no duty to

defend or indemnify—under the insurance agents errors and omissions ("E&O") and the security

interests E&O coverage forms of its garage liability policies.

K&C claims the only issue ripe for this Court's determination is Owners' duty to defend and that issue is not before the Court because Owners has been affording K&C a defense under the truth-in-lending errors and omissions coverage of its garage liability policies. While it is true that Owners is not presently challenging that it owes a defense under its truth-in-lending coverage, it does not follow that it is prohibited from arguing that its other coverages are not triggered at all such that it owes neither defense nor indemnity under those separate and distinct coverage parts.

As the Missouri Court of Appeals has noted, "[w]hether an underlying petition has alleged a claim that is covered by the terms of the insurance policy is a legal question, which is not dependent on a factual determination of the underlying claims." *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 792 (Mo. App. W.D. 2006). There exists a duty to defend only if the policy provides for defense and the petition, along with the "facts at the outset of the case," show there is a *potential* for coverage. *McCormack Baron Mgm't Servs., Inc. v. American Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999) (emphasis added). It follows that **if there is no *potential* for coverage and, thus, no duty to defend under a particular coverage part, there is no duty to indemnify**. *See Trainwreck West, Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. App. E.D. 2007) (noting that "[w]here there is no duty to defend, there is no duty to indemnify."); *see also Swan Const. Co., Inc. v. Bituminous Cas. Corp.*, 588 F. Supp. 65 (E.D. Mo. 1984) (stating "[i]f there is no duty to defend under the policy, then defendant has no obligation to pay the settlement amount."). Thus, to succeed in its Motion for Partial Summary Judgment, Owners need only show that the allegations of the underlying Class Action Petition, even if true, do not trigger coverage under the policy forms at issue.

K&C relies principally on *Universal Underwriters Insurance Company v. Lou Fusz Automotive Network, Inc.* in arguing that Owners' motion is unripe. 300 F.Supp.2d 888, 890 (E.D. Mo. 2004).

*Universal Underwriters* is inapposite. In that case, the district court determined that the insurer *did*, in fact, have a duty to defend and held that the indemnity determination was not ripe. *Id.* In other words, the court found that the facts alleged in the underlying petition, taken as true, did allege a claim that fell within the policy's coverage and, as such, there was a *potential* for coverage. *Id.* at 894. If, however, the court had found that the underlying petition did not create the potential for coverage, it could have—and should have—determined that the insurer had no duty to indemnify. That is what Owners is asking the Court to do for the coverages addressed in its Motion.

Because Owners seeks a determination that there is no *potential* for coverage for the allegations of the Class Action Petition under the policy forms referenced in its Motion for Partial Summary Judgment, this Court need not await resolution of the underlying action to make that determination. Rather, this Court may properly determine that the allegations in the underlying Class Action Petition simply do not fall within the coverage forms at issue and, therefore, Owners owes no coverage to K&C under those forms.

**B.     Owners has not waived, nor is it estopped from asserting, any policy defenses addressed in its Motion for Partial Summary Judgment**

K&C, in its next attempt to escape the merits of Owners' coverage position, is its claim that K&C has waived or is estopped from asserting all policy defenses. K&C's only basis for its waiver and estoppel arguments is a letter dated May 26, 2009, which was sent **after** Owners expressly and completely reserved all of its rights under its policies for the claims brought in the underlying Class Action Petition. That letter, which Owners attached to its Complaint and Motion, clearly serves as no more than an acknowledgement that, in spite of the coverage issues addressed in its prior correspondence, it was forwarding the Class Action Petition to an attorney for defense. At no point did that correspondence indicate that Owners was "withdrawing" its reservation of rights or declination of coverage as K&C suggests.

As the Missouri Supreme Court has noted, waiver requires "the *intentional* relinquishment of a known right" and may only be implied "by conduct that *clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right*." *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. banc 1999) (emphasis added). Estoppel in the insurance context only applies when "(1) the insurer asserted a policy defense in denying coverage and later asserted another inconsistent ground, (2) the insurer's actions induced the insured to rely on the original defense and thereby caused the insured injury, and (3) the insured suffered prejudice as a result of such reliance." *Versaw v. Versaw,* 202 S.W.3d 638, 650 (Mo. App. S.D. 2006) (citations omitted). Further, "[e]stoppel will not be lightly embraced in an insurance coverage case; it only has application when all elements thereof clearly appear." Indeed, as the Missouri Supreme Court has acknowledged, estoppel is an equitable doctrine and applies only when an insurer **unjustifiably** denies coverage. *James v. Paul,* 49 S.W.3d 678, 688 (Mo. banc 2001).

Here, Owners informed K&C of its coverage position in its February 2009 correspondence. Then, despite doubt as to whether there was any coverage for the Class Action Petition, Owners chose to defend K&C and continues to defend K&C to date under the truth-in-lending E&O coverage of its Garage Liability Policies—the only coverage even potentially applicable to the claims in the underlying Class Action Petition. Further, if there was any doubt that Owners was defending under a full reservation of its rights under the policies, any such doubt was eliminated by Owners' letter of February 22, 2011, in which it set forth its coverage position in detail and again asserted its reservation of rights. (*See* Ex. T.) K&C has accepted that defense for over a year and should not be entitled to the equitable doctrine of estoppel based on the flawed premise that it was prejudiced because it was not aware its defense was being afforded under a reservation of rights.

Finally, even if K&C is correct that Owners' May 26, 2009 correspondence evidenced its intent to defend "without reservation," which Owners disputes, Owners is still not barred from asserting the arguments set forth in its Motion for Partial Summary Judgment. Owners is not

4

attempting to rely merely on an exclusion that it would have had the burden to prove. Rather, Owners argues the claims in the underlying Class Action Petition simply do not fall -- even potentially -- within the insuring agreements of the referenced coverages—*i.e.*, the CGL policies, the Garage Liability Policies' coverage for bodily injury, property damage, personal injury, and advertising injury, and the insurance agents and security interests E&O coverages.

It is black letter law in Missouri that the doctrines of waiver and estoppel may not be used to bring a claim within coverage when the risk is not covered by the policy's terms or is expressly excluded therefrom. *Century Fire Sprinklers, Inc. v. CNA/Transportation Ins. Co.*, 87 S.W.3d 408, 417 (Mo. App. W.D. 2002); *St. Louis Trimming, Inc. v. American Credit Indem. Co.*, 113 F.3d 900, 900 (8th Cir. 1997). This is because "estoppel and waiver do not themselves give a cause of action" and "the purpose of estoppel is to preserve rights previously acquired *but not to create new ones*." *Lero v. State Farm Fire and Cas. Co.,* 2011 WL 5041191, at *6 (Mo. App. W.D. Oct. 25, 2011) (emphasis added).

As discussed in detail in Owners' Motion, the underlying Class Action Petition simply does not contain allegations that bring it under the coverage of the CGL Policies, which afford coverage only for an "occurrence" giving rise to "property damage" or "bodily injury" and for certain "advertising injury" and personal injury offenses not at issue. Nor does it contain any allegations bringing under the Garage Liability Policies' coverage for "property damage," "bodily injury," "advertising injury," or "personal injury," or the Garage Liability Policies' E&O coverages for insurance agent services and recording security interests. Those coverages simply have nothing to do with the claims in the underlying action, which relate to K&C's allegedly unlawful sales and financing practices in charging a public official fee to its customers and in failing to give proper notices before repossessing and reselling vehicles. (*See* Exhibit M.)

Taking K&C's waiver and estoppel argument to its logical conclusion and allowing K&C to create coverage under policy forms that objectively do not even potentially cover the claims at issue

would have a devastating effect on the insurance industry. Indeed, an insurer agreeing to defend a covered claim would have to disclaim coverage and reserve its rights under every other type of policy it may have issued to an insured or risk a waiver and estoppel defense when the insured argues it was entitled to coverage under other coverage forms not originally addressed by the insurer.

K&C's argument seems even more absurd when considering how it would apply to personal insurance lines as opposed to more complex commercial coverages. For example, insurance companies frequently provide home, life, and auto insurance policies to individuals. Under K&C's argument, when an insured is sued for an auto accident that he or she caused and submits the claim to the insurer, if the insurer decides to defend the case under its auto policy, the insurer must also reserve its rights under the homeowners policy and even the *life insurance* policy to avoid a claim of waiver or estoppel under those coverages. Not only is that concept absurd, it is contrary to the well-established precedent, cited above, that coverage cannot be created through waiver or estoppel.

In support of its waiver and estoppel arguments, K&C relies almost exclusively on the Missouri Supreme Court's decision in *Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 765 (Mo. banc 2009). In *Kinnaman,* however, the insurer agreed to provide a defense after the insured had entered into a consent judgment under MO. REV. STAT. § 537.065 without the insurer's knowledge. *Id.* at 763-64. After expressly agreeing to defend the insured without reservation, the insurer made no attempt to either dispute the settlement agreement before it became final, appeal the settlement, or withdraw its agreement to defend without reservation, despite ample opportunity to do so. *Id.* at 764. Indeed, the Missouri Supreme Court emphasized that the insurer "instead sat silent in the underlying action and did nothing until the [plaintiffs] filed their garnishment action." *Id.* As a result, the Missouri Supreme Court concluded that the insurer had waived its coverage defenses by defending the action without a reservation of rights despite knowledge of noncoverage. *Id.* at 765.

Unlike the insurer in *Kinnaman,* Owners agreed to defend K&C only after it asserted a full and complete reservation of its rights under the policies it issued to K&C *and* at all times actively participated in the defense. (*See* Exhibit R.) Further, Owners never expressly withdrew its reservation of rights. Moreover, even if there is some question as to whether Owners at some point defended K&C without a reservation, it clearly withdrew any agreement to defend without reservation, and K&C has accepted this defense under a reservation of rights for over a year.

There was no clear and unequivocal conduct on Owners' part evidencing an intent to relinquish any rights under its policies. Rather, there was at best uncertainty on K&C's part, which Owners subsequently clarified in its February 22, 2011 letter. Therefore, the well-established governing principle that the doctrines of waiver and estoppel cannot create coverage where it does not exist mandates that Owners has no liability for the claims asserted against K&C in the Class Action Petition under the policy forms referenced in Owners' pending Motion.

The other cases cited by K&C do not compel a contrary conclusion. For instance, *Royle Mining Co. v. Fidelity & Casualty Co. of New York*, in addition to being over 100 years old and of questionable validity in light of the *Century Fire* decision and the other cases holding that coverage cannot be created through estoppel, involved an insurer that was found to have *never* asserted any reservation of rights during the pendency of the underlying lawsuit until after judgment and execution thereon. *Royle Mining Co. v. Fidelity & Cas. Co. of New York*, 142 S.W. 438, 442 (Mo. App. 1911). In this case, K&C admits Owners set forth a full reservation of its rights in February 2009 after it first received notice of the claim and later set forth, in detail, its policy defenses in its reservation of rights letter of February 22, 2011. Further, the insurer in *Royle Mining* was estopped from relying on an *exclusion* in its policy for injury sustained because the insured failed to obey a safety statute, which the insurer had the burden of proving. *Id.* at 445. It was not a circumstance where the underlying suit did not fall within the insurance policy's coverage in the first instance, as is

7

the case with the policy forms at issue here.

K&C also relies on *Mistele v. Ogle*, 293 S.W.2d 330, 334 (Mo. 1956). That case is also distinguishable. In *Mistele*, the insurer never reserved its rights before or while defending the case and, indeed, never asserted its coverage defenses at all until it ultimately withdrew its defense, apparently after leaving its insured to have a default judgment entered against him. *Id.* at 332. Further, there was no question that the claim at issue—an auto claim—was a claim that would have been covered; the issue was whether the vehicle involved in the accident was owned by the insured and, thus a covered vehicle. *Id.* There were also significant factual issues in that case as to when the insurance company knew that the vehicle might not have been owned by the insured such that it was appropriate for a jury to determine whether it waived its argument that the claim was not covered based upon the ownership of the vehicle. *Id.* at 333-34. Those issues are not present here.

The undisputed facts show Owners advised K&C that there were issues as to coverage and reserved its rights upon its first notice of the claim in 2009. There is also no dispute that Owners reiterated its reservation of rights in February 2011, and that K&C has accepted that defense under a reservation for over a year. Further, there is no factual question as to whether the claims in the underlying Class Action Petition fall within the coverages at issue in Owners' Motion for Partial Summary Judgment. Rather, this Court may make that determination by comparing the allegations of the Class Action Petition to the policies. K&C may not use waiver and estoppel to cause those claims to be covered when Owners never contracted to cover such claims under the coverages addressed in its Motion. *See Mistele*, 293 S.W.2d at 333 (noting that if the vehicle was not owned by the insured but by the prior owner, his son, then "the policy did not cover [the son's] liability and could not be made to do so by estoppel.").[1]

---

[1] K&C also relies on *State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.*, 485 S.W.2d 397 (Mo. 1972). That case is another where vehicle ownership was the sole coverage issue. The case is nearly identical to *Mistele* and is similarly distinguishable in that the insurer did not reserve its rights until it denied coverage after having defended

In sum, waiver and estoppel do not apply in this case because Owners has at all times made K&C aware of its intention to assert policy defenses and was justified in doing so.[2] Further, even if Owners could be said to have afforded a defense for a period of time without reserving its rights, it reiterated its reservation in detail in a letter sent to K&C in February 2011, and K&C has accepted Owners' defense subject to a reservation of rights since that date. Accordingly, it should not be entitled to the equitable doctrines of waiver and estoppel. Finally, waiver and estoppel cannot be used to *create* coverage where a claim simply does not even potentially fall within the policy's insuring agreement. Therefore, Owners is not barred from arguing that the claims in the Class Action Petition simply do not trigger the coverages at issue.

## C. The claims in the Class Action Petition do not allege "property damage" caused by an "occurrence."

K&C claims that coverage arguably exists under the various policies' definitions of "property damage." Property damage is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property. . . ." It also includes the "[l]oss of use of tangible property that is not physically injured."

The claims in the Class Action Petition simply do not even *arguably* seek damages for "property damage." They relate to K&C's allegedly fraudulent public official fee and for defects in its Notice of Sale—not damage to or loss of use of any vehicles. K&C claims that the "deprivation of the Plaintiffs' use and enjoyment of their respective vehicles on account of K&C's repossession of these vehicles without first satisfying Missouri's statutory requirements governing vehicle repossessions" places the alleged damages within the definition of "property damage." Yet, the damages are for the violation of these "statutory requirements"—i.e., the notice requirements—and

without reservation for 21 months. *Id.* at 402. Moreover, the Court found that the insurer was *not* estopped from denying coverage as it denied coverage shortly after learning that the vehicle was not owned by its insured. *Id.*
[2] Owners notes that its arguments against K&C's estoppel argument apply with equal force to the waiver argument. Indeed, Missouri courts have used waiver and estoppel interchangeably in the context of insurance. *Lineschmidt v. Continental Cas. Co.*, 204 S.W.2d 295, 925-26 (Mo. 1947).

are set forth in the statute in that manner, not as damages for loss of use due to the repossession itself. *See* section 400.9-625(c)(2), RSMo 2000 (the section under which Plaintiffs sought and were awarded "statutory damages" in Count III of the Class Action Petition); Exhibit O, Partial Summary Judgment.

Further, as noted in Owners' Memorandum in Support, courts that have addressed the issue of whether intentional repossession of a vehicle is "property damage" under liability policies have endorsed Owners' position. *See also Landers Auto Group Number One, Inc. v. Continental Western Ins. Co.*, 2009 WL 1956392, *6 (E.D. Ark. 2009) (noting that damages for wrongful repossession are damages resulting from a breach of contract or violation of the Truth-in-Lending Act and are not "property damage"). K&C's failure to follow statutory notice provisions cannot be said to be "property damage" under the CGL or Garage Liability Policies. As such, there is no coverage under the CGL Policies or the Garage Liability Policies' "property damage" coverage.

Additionally, the Class Action Petition also does not allege any accidental conduct and, as such, there was no covered "occurrence." The CGL and Garage Liability Policies define "occurrence" as an "accident." Simply put, the Class Action Petition alleges no accidental conduct. It alleges that K&C charged a fraudulent public official fee and "convert[ed] such fees to its own use and benefit and failing to disclose such charge in the installment contract." It alleges that this was done with an evil motive or reckless disregard for the rights of others. It also alleges that K&C included the amount paid to public officials in the disclosed cash price of vehicles in its Retail Installment Contract and that K&C sent an improper Notice of Sale and failed to send an explanation of the remaining surplus or deficiency before repossession and disposition of the vehicle in violation of the UCC. Simply put, none of the conduct alleged in the Class Action Petition is the type of "fortuitous," accidental conduct that Missouri courts have found constitutes an "occurrence."

It is worth emphasizing that for coverage to exist under the CGL Policies and the Garage

Liability Policies' provisions for "property damage," there must be **both** an "occurrence," i.e., an

accident, **and** "property damage" and the "property damage" must be "**caused by** an 'occurrence'."

(Emphasis added).  The only "property damage" K&C even arguably identifies is the loss of use

resulting from the repossession of the plaintiffs' vehicles.  There is no question that, even if this is

property damage, it did not arise from any accident.  K&C has not argued—indeed, it would be

disingenuous for it to argue—that it *accidentally* repossessed the vehicles.

A case from the 8th Circuit applying Arkansas law under similar facts is instructive as to this

point.  *Landers Auto Group Number One, Inc. v. Continental Western Ins. Co.,* 621 F.3d 810 (8th Cir.

2010).  In *Landers*, the dealer repossessed a car when the financing company failed to credit several

of her payments and listed her as a delinquent.  *Id.* at 811.  The purchaser filed suit against dealer for

wrongful repossession and conversion, and the dealer sought coverage from its liability insurer.  *Id.*

at 811-12.  The Court found there was no coverage under a garage liability policy, a CGL policy, or

under the Truth-in-Lending E&O coverage, in part, because the act of repossessing a vehicle was

intentional and the resulting loss of use was expected such that it could not be considered an

accident or "occurrence."  *Id.* at 814-15.

The Court stated:

First, the plain language of the word "accident" when read in context with the garage

policy and with the definition in the Commercial policy makes it clear the policy

refers to physical accidents as opposed to accounting errors. Second, the claims

against [Dealer] do not arise from the accounting errors but from intentional acts

taken by [Dealer] with respect to its rights and obligations under the financing

agreement, that is, the repossession of the car and alleged failure to negotiate in good

faith. Those are intentional acts that would not fit the ordinary definition of an

accident.

The incident is also excluded from coverage under this policy because the loss of use

was a loss [Dealer] "expected" would occur when it took the action of repossessing

the car. . . .

*Id.* at 815.

As in *Landers*, there is no argument that the claims of the Class Action Petition allege

"property damage" "caused by an 'occurrence'" as required for coverage under the CGL Policies

and the Garage Liability Policies' property damage coverage. The repossession of the vehicles was

not accidental and any resulting loss of use was necessarily expected by K&C. As such, Owners is

entitled to partial summary judgment and a declaration that it has no duty to defend or indemnify

K&C under the CGL Policies or the Garage Liability Policies' coverage part for "bodily injury,"

"property damage," "advertising injury," and "personal injury."

**D. There is no potential coverage under the Security Interest Errors and Omissions Endorsements in the Garage Liability Policies as the underlying Class Action Petition has nothing to do with recording security interests.**

The Security Interest E&O coverage in the Garage Liability Policies explicitly applies only

when the insured is responsible for recording a security interest but fails to do so, then sells the

vehicle or transfers title with knowledge of the interest and fails to protect the interest, and the legal

owner or lienholder sustains a loss therefrom. Simply put, the underlying Class Action Petition has

**nothing** to do with failing to properly record security interests. K&C fails to even address the fact

that for this coverage to apply, there must be a claim that K&C failed to properly *record* a security

interest, then sold the vehicle with knowledge of the interest and failed to protect the security

interest.

There is simply no allegation in the Class Action Petition that even arguably falls within the Security Interest E&O coverage. This Court should reject K&C's attempt to greatly expand what is covered under the plain language of the policies. "Absent a statute or public policy requiring coverage, a court will not use its inventive powers to rewrite a policy to provide coverage for which the parties never contracted." *Christensen v. Farmers Ins. Co., Inc.*, 307 S.W.3d 654, 658 (Mo. App. E.D. 2010). Because the Court would have to rewrite the policies to find coverage for the Class Action Petition under the Security Interest E&O coverage part, K&C's argument should be rejected and this Court should grant Owners partial summary judgment.

### E. The Owners policies do not cover punitive damages or statutory penalties.

It should be noted initially that if there is no coverage for the claims of the Class Action Petition, then there is obviously no coverage for any punitive damages or statutory penalties associated with those claims. Because Owners is entitled to Partial Summary Judgment under the CGL policies and the Garage Liability Policies' coverage parts for bodily injury, property, damage, personal injury, and advertising injury, as well as the Garage Liability Policies' provisions for Security Interest and Insurance Agents E&O coverage, there is likewise no coverage for punitive damages or statutory penalties under those coverage parts. Owners also seeks a declaration that, in the event the claims of the Class Action Petition are covered under *any* of the Owners policies' coverage parts, including the Truth-in-Lending E&O coverage, there is still no coverage for punitive damages or statutory penalties and Owners is entitled to a declaration to that effect.

K&C notes that some of the relief available under the MMPA includes *actual* damages, as opposed to statutory penalties or punitive damages. While it is Owners' position that those claims are not covered by the policies for other reasons, its argument that there is no coverage for punitive damages or statutory penalties does not relate to any actual damages sought by the underlying plaintiffs. Rather, Owners seeks a declaration that, pursuant to well-settled Missouri law, there is no

coverage under any of the policies at issue for punitive damages or penalties, fees, or fines prescribed by statute that the underlying plaintiffs are seeking in their suit against K&C.

Owners stands by its argument that its policies afford no coverage for punitive damages and statutory penalties, as set forth in pages 25-27 of its Memorandum in Support. In arguing that the Owners policies may afford coverage for punitive damages, K&C relies on *Colson v. Lloyd's of London*, 435 S.W.2d 42 (Mo. App. 1968). K&C's reliance on the *Colson* case is misplaced because the policy in that case did not limit coverage to "damages because of" "property damage" or "damages because of" errors and omissions in recording security interests or performing insurance agent services. 435 S.W.2d 42, 46-47 (Mo. App. 1968). Rather, *Schnuck Markets* and the other cases cited by Owners are dispositive. The fact that punitive damages may be authorized by statute does not change the character of such damages—they are still damages to punish the offender and deter similar conduct and are not damages *for* property damage or errors and omissions on the part of K&C. Therefore, to the extent K&C may be found liable for punitive damages or statutory penalties fines, or fees, Owners is entitled to a determination that its policies do not cover them.

## Conclusion

As set forth above and more fully in its Memorandum in Support of its Motion for Partial Summary Judgment, Owners has established that its Motion is ripe for determination, that its arguments are not barred under principles of waiver and estoppel, and that it is entitled to judgment as a matter of law on its Complaint for Declaratory Judgment as to the coverages addressed in its Motion. Accordingly, this Court should enter partial summary judgment and declare that Owners owes no duty to defend or indemnify K&C for the claims brought by Martinez and the class plaintiffs in the Class Action Petition under the CGL Policy, under the Garage Liability Policy's "bodily injury," "property damage," "advertising injury," or "personal injury" coverages, or under

the insurance agents and security interests E&O coverages, and that it is not liable for any punitive damages or statutory penalties under any of the policies identified in its Complaint.

Respectfully submitted,

BROWN & JAMES, P.C.

/s/ Patrick A. Bousquet
Russell F. Watters, #25758MO
T. Michael Ward, #32816MO
Patrick A. Bousquet, #57729MO
Attorneys for Plaintiff
1010 Market Street, 20th Floor
St. Louis, Missouri 63101-2000
314-421-3400
314-421-3128 – FAX
pbousquet@bjpc.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 27, 2012, the foregoing was filed electronically with the Clerk of Court as an exhibit to Owners' Motion for Leave to Exceed the Page Limit, and is filed and served today again as a stand-alone document per the Court's instruction, to be served by operation of the Court's CM/ECF system upon all counsel of record.

/s/ Patrick A. Bousquet

9796470